898 F.2d 659
 29 Fed. R. Evid. Serv. 1321
 UNITED STATES of America, Appellee,
v.
Lance D. FOOTE, Appellant.
UNITED STATES of America, Appellee,
v.
Christopher E. WILLIAMS a/k/a Tony, Appellant.
UNITED STATES of America, Appellee,
v.
Maxine MONROE a/k/a Bubbles, Appellant.
UNITED STATES of America, Appellee,
v.
Andrew H. MORTON a/k/a Andrew H. Butler, Appellant.
UNITED STATES of America, Appellee,
v.
Charles E. THOMPSON a/k/a Speedball, Appellant.
 Nos. 89-1715, 89-1716, 89-1717, 89-1849 and 89-2024.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 13, 1989.
Decided March 15, 1990.
 
 Kevin Rotert and Larry D. Harman, Kansas City, Mo., for Andrew H. Morton.
 Charles Teschner, Kansas City, Mo., for U.S.
 David L. Owen, Jr., Kansas City, Mo., Michael S. Shipley, Liberty, Mo., W. Edwards Reeves and Steven C. Low, Kansas City, Mo., for Lance D. Foote, Christopher E. Williams, Maxine Monroe and Charles E. Thompson.
 Before BOWMAN and BEAM, Circuit Judges, and HENLEY, Senior Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 These are the consolidated appeals of five defendants who were charged in a fourteen-count indictment with conspiracy to distribute cocaine and various other distribution and weapon charges. Two of the appellants, Lance Foote and Charles Thompson, were tried jointly by a jury. Foote was convicted of one count of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846 (1988); two counts of distribution of cocaine, 21 U.S.C. Sec. 841(a)(1) (1988); and one count of using a firearm in the commission of a drug trafficking offense, 18 U.S.C. Sec. 924(c) (Supp. V 1987). Thompson was convicted of one count of conspiracy to distribute cocaine, two counts of distribution of cocaine, and two counts of using a firearm in the commission of a drug trafficking offense. The other three appellants, Christopher Williams, Andrew Morton, and Maxine Monroe, each pleaded guilty to one count of conspiracy to distribute cocaine and one count of use of a firearm in the distribution of cocaine. The remaining charges against these appellants were dismissed.
 
 
 2
 The District Court[1] sentenced Foote to a prison term of 140 months, consisting of three concurrent 80-month sentences on the conspiracy count and the two distribution counts, and a consecutive 60-month sentence on the firearm count. Thompson received a total of 243 months in prison, three concurrent 63-month sentences on the conspiracy count and the two distribution counts, a consecutive 60-month sentence on one firearm count, and an additional 120 months to be served consecutively on the other weapons charge. The appellants who pleaded guilty each were sentenced by the District Court[2] to 63 months on the conspiracy counts and 60 months on the weapons charges, to be served consecutively.
 
 
 3
 The consolidated appeals raise challenges to the convictions and sentences. We affirm.
 
 I.
 
 4
 The sales of cocaine base, or crack, that gave rise to the charges in these cases occurred in apartments at 4031 Harrison and 4422 Troost in Kansas City, Missouri. Undercover officers from the Kansas City Police Department, principally Detective Robert Ransburg, purchased cocaine base at 4031 Harrison or 4422 Troost on August 11, 12, 16, and 30; September 2; and October 1, 1988. A total of eight individuals, the five appellants here plus Brian Anglin, Samuel Gumbs, and Carmen Wagner, were charged in Count I of the indictment with conspiracy to distribute cocaine.
 
 
 5
 On August 11, Ransburg, accompanied by a confidential informant, went to apartment 3S at 4031 Harrison. Williams told Ransburg that no crack was currently available. Morton and Monroe soon arrived, however, and Ransburg purchased 1.3 grams of cocaine base from them. Williams was carrying a handgun during the exchange. This transaction was the basis for the distribution offenses charged in Count II and the firearm charges in Count III.
 
 
 6
 The next day, August 12, Ransburg returned to 4031 Harrison and was admitted by Thompson, who was holding a gun. Williams also was present at the apartment. Ransburg purchased 2.1 grams of cocaine base, handing the money to Thompson who passed it to Williams. This transaction was the basis for Counts IV and V.
 
 
 7
 On August 16, Ransburg went to 4031 Harrison and purchased 0.9 grams of crack cocaine from Anglin. While completing this exchange in the front room of the apartment, Ransburg could see Thompson selling crack to persons at the back door of the apartment. Both Thompson and Anglin were carrying firearms. This sale was the basis for Counts VI and VII.
 
 
 8
 Detective Ransburg returned to the Harrison apartment on August 22 and spoke with Foote and Wagner. Foote told Ransburg that no crack was available but that he could take Ransburg to another location to make a buy. Ransburg declined this offer.
 
 
 9
 Ransburg next visited 4031 Harrison on August 30. On that occasion, Williams met Ransburg outside the apartment, followed him into the apartment, and sold Ransburg 0.9 grams of crack cocaine. Both Wagner and Foote were present during the transaction. This purchase was the basis of Count VIII.
 
 
 10
 On September 2, Ransburg returned to 4031 Harrison. He met Foote outside on the apartment building stairs and Foote followed Ransburg into the apartment. In the apartment, Ransburg rejected the crack that Williams displayed and indicated that he wanted to purchase a larger amount. Foote then agreed to take Ransburg to another location, a third floor apartment at 4422 Troost where Anglin and Gumbs were present. On arrival, Foote spoke to Gumbs who obtained a package of crack from Anglin and spread it out for Ransburg to view. Ransburg selected 9.7 grams of cocaine, paid, and left with Foote. During the sale Anglin was holding a firearm. This sale was the basis for Counts IX and X.
 
 
 11
 Ransburg's second and final visit to 4422 Troost was on September 12. He discussed purchasing cocaine base with Anglin and Williams, but they were unwilling to sell to him. Foote was present during the discussion. As Ransburg was leaving, he met Thompson who advised him to watch out for police as several were nearby.
 
 
 12
 Detective Donald Birdwell, another officer involved in the investigation, purchased 0.4 grams of crack cocaine at 4031 Harrison on October 1. Birdwell met Foote outside the building and Foote followed him inside. In the apartment, Birdwell asked Foote if he could buy a half gram of cocaine and Foote directed him to the kitchen. In the kitchen, Williams sold cocaine to Birdwell in Foote's presence. This sale was the basis for Count XII.
 
 
 13
 On October 13, the police raided the apartment at 4422 Troost. Just prior to their arrests on the second floor landing, Foote was seen throwing down a container of crack and Anglin was spotted dropping a pistol. Thompson and several others were found in the apartment along with 4.5 grams of cocaine and a firearm. This evidence was the basis for the charges of possession with intent to distribute in Count XIII and the weapon charges in Count XIV.
 
 
 14
 Foote was convicted of Counts I, IX, X and XII and was acquitted on Counts VIII, XIII, and XIV. Thompson was found guilty of Counts I, IV, VI, and VII and given a directed verdict on Counts XIII and XIV. Williams, Morton, and Monroe pleaded guilty to Counts I and III and the remaining charges were dismissed.
 
 
 15
 The facts outlined above provide a basic description of the offenses charged. The circumstances of the case will be discussed in greater detail as necessary for the disposition of the arguments raised in these appeals.
 
 II.
 
 16
 We turn first to Foote's and Thompson's challenges to their convictions. The other appellants raise arguments that apply solely to their sentences.
 
 A.
 
 17
 Foote argues that the evidence presented was insufficient to find him guilty beyond a reasonable doubt and that his motion for judgment of acquittal should have been granted on all four of the counts upon which he was convicted. We disagree.
 
 
 18
 Foote's convictions must be upheld if, viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable fact-finder could have found guilt beyond a reasonable doubt. United States v. Marin-Cifuentes, 866 F.2d 988, 992 (8th Cir.1989). The essential elements of a crime may be proved by circumstantial as well as direct evidence. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).
 
 
 19
 To convict Foote of conspiracy under 21 U.S.C. Sec. 846, the government had to prove that he entered into an agreement with at least one other person and that the agreement had as its objective a violation of the law. Henderson v. United States, 815 F.2d 1189, 1191 (8th Cir.1987); cf. United States v. Covos, 872 F.2d 805, 810 (8th Cir.) (holding that section 846 does not require proof of an overt act in addition to proof of a conspiracy), cert. denied, --- U.S. ----, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). "The independent evidence showing a conspiracy may be direct or totally circumstantial." United States v. Jankowski, 713 F.2d 394, 396 (8th Cir.1983), cert. denied, 464 U.S. 1051, 104 S.Ct. 732, 79 L.Ed.2d 192 (1984). Once a conspiracy was proved, even slight evidence connecting Foote to the conspiracy would be sufficient to support his conviction. United States v. Mims, 812 F.2d 1068, 1075 (8th Cir.1987). The government need not prove that Foote knew all the conspirators or that all details of the conspiracy were known to him. Id. at 1074-75.
 
 
 20
 The indictment charged all eight defendants with conspiring to distribute cocaine base from August 11 to October 13, 1988. During that time, undercover officers purchased cocaine at 4031 Harrison and 4422 Troost on six occasions from various members of the conspiracy. Foote was present and participated in several of the transactions. On one occasion he discussed the possibility of taking Ransburg to another location to purchase drugs, and on September 2, Foote led Ransburg to the Troost address and assisted him in purchasing a significant amount of cocaine. We conclude that there was sufficient evidence for the jury to find that Foote was guilty on the charge of conspiracy to distribute cocaine.
 
 
 21
 Foote was prosecuted as an aider and abettor in the September 2 (Count IX) and October 1 (Count XII) distribution offenses for which he was convicted. To convict him, the government needed to prove "(1) that [Foote] associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed." United States v. Lanier, 838 F.2d 281, 284 (8th Cir.1988). The evidence shows that on September 2, Foote discussed a cocaine purchase with Ransburg and guided Ransburg from the Harrison address to the Troost address, where cocaine was available. On October 1, Foote greeted Ransburg at the door of the Troost apartment and directed him to the kitchen where Ransburg purchased cocaine from Williams in Foote's presence. Our review of the record convinces us that there was sufficient evidence for a reasonable jury to find Foote guilty of aiding and abetting the drug sales in Counts IX and XII.
 
 
 22
 Foote challenges his conviction on Count X, using a firearm in connection with the drug distribution charged in Count IX, a violation of 18 U.S.C. Sec. 924(c)(1). He argues that he did not have possession of or "use" the firearm during the offense. We disagree.
 
 
 23
 As summarized above, on September 2 Foote led Ransburg from 4031 Harrison to 4422 Troost where Ransburg purchased crack from Anglin and Gumbs in Foote's presence. During this sale, Anglin was carrying a pistol. This Court has previously interpreted the "use" language of section 924(c)(1) to mean "[t]he presence and availability [of the firearm] in light of the evident need." United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985). Anglin's possession of a firearm for security and intimidation purposes facilitated the drug transaction in which Foote participated. As Anglin and Foote were coconspirators, Foote did not need personally to possess the firearm in order to be convicted of violating section 924(c)(1). See United States v. Matra, 841 F.2d 837, 841-42 (8th Cir.1988).
 
 
 24
 The evidence was sufficient for a reasonable jury to convict Foote on all four of the charges on which he was found guilty and his convictions will not be overturned.
 
 B.
 
 25
 Thompson's first argument is that his conviction should be reversed because his pretrial detention, ordered by a magistrate, was improper and denied him the ability to assist in the preparation of his defense. This argument, however, is not properly before us. A defendant may move for review by the district court of a pretrial detention order entered by a magistrate. 18 U.S.C. Sec. 3145(b) (1988). Further, under 18 U.S.C. Sec. 3145(c) (1988), the district court's ruling on the question of pretrial detention may be appealed to the circuit court of appeals. The record in this case shows that Thompson did not seek review of the magistrate's detention order until the present appeal was taken. The validity of the pretrial detention order cannot properly be raised for the first time on appeal following defendant's trial and conviction, and we therefore will not consider this issue.
 
 
 26
 Thompson next argues that the District Court improperly denied his motion to compel drug testing of Detective Ransburg, the principal government witness. Prior to trial, Thompson moved to compel drug testing of Ransburg, alleging he had seen Ransburg use cocaine during the period of the undercover investigation. At the evidentiary hearing held on this issue, the magistrate made proposed findings of fact subsequently adopted by the District Court. These included: (1) Ransburg, who wore a body recorder during his undercover activity on September 2, was recorded as stating to one of the defendants that he occasionally smoked cocaine; (2) "[e]ach time Ransburg had contact with any of the defendants he was followed and, where possible, observed by a surveillance team"; (3) according to the surveillance logs of Ransburg's undercover activity, Ransburg typically was outside the surveillance of law enforcement officers and with defendants for only three to five minutes, with the longest unobserved period being twenty minutes; (4) law enforcement "officers who observed and spoke with Ransburg immediately after his undercover encounters with defendants did not see ... any evidence of cocaine intoxication"; and (5) Thompson claimed that Ransburg smoked crack cocaine in his presence on two occasions but could not remember the dates on which the drug use occurred. Report and Recommendation at 3-5.
 
 
 27
 The District Court agreed with the magistrate's conclusion that evidence showing Ransburg used a controlled substance during the undercover investigation would be relevant to Thompson's defense. The court, however, consistent with the magistrate's recommendation, denied Thompson's motion to compel drug testing of Detective Ransburg because of the Fourth and Fifth Amendment implications of forcing Ransburg to undergo drug testing; the intrusive and unreliable nature of the experimental radioimmunoassay of hair ("RIAH") test that Thompson requested; and the lack of any evidence that Ransburg used, or even had the opportunity to use, an illegal substance during any of the drug transactions involved in this case.
 
 
 28
 Decisions regarding the scope of discovery and other similar pretrial motions are within the sound discretion of the district court. See, e.g., United States v. Saint John, 851 F.2d 1096, 1098 (8th Cir.1988) ("decision whether or not to appoint an expert is entrusted to the sound discretion of the district court, and we may reverse only if that discretion is abused"); United States v. Levine, 700 F.2d 1176, 1181-82 (8th Cir.1983) (district court's refusal to exclude statements made by appellant despite the late disclosure of these statements was not abuse of discretion). In the factual context of this case, we cannot say that the District Court abused its discretion by denying Thompson's motion.
 
 
 29
 Thompson's final attack on his conviction is that the District Court committed reversible error by excluding the testimony of an expert witness regarding the effects of cocaine addiction. A district court has broad discretion concerning the admissibility of evidence and this Court will not substitute its judgment unless the district court has abused its discretion. United States v. Felak, 831 F.2d 794, 797 (8th Cir.1987).
 
 
 30
 Thompson sought to introduce the testimony of Dr. Harold Brown, an expert on cocaine addiction, to show the effects of cocaine addiction on an individual and to negate the necessary element of specific intent in the distribution offenses charged. The District Court excluded Dr. Brown's testimony, ruling that it was irrelevant since Dr. Brown had not personally examined Thompson and would not be able to testify as to whether Thompson was acting under the influence of narcotics at the time the alleged offenses occurred. Further, the court noted that Thompson himself could testify as to his addiction, and that the effects of cocaine addiction on an individual's mental prowess were within the jury's common understanding.
 
 
 31
 Expert testimony is admissible only when the specialized knowledge of the expert will assist the trier of fact in understanding the evidence or in determining a fact in issue. Fed.R.Evid. 702. The jury here properly was instructed that, in order to find Thompson guilty of the distribution offenses with which he was charged, the government had to prove that he knowingly and intentionally committed these offenses. Thompson testified that he occasionally had blackouts and hallucinations, and that he was probably high on drugs throughout the police investigation of the 4031 Harrison and 4422 Troost apartments. There is no reason to believe that the jury was unable to determine whether Thompson acted intentionally and knowingly in the commission of the alleged offenses. See Felak, 831 F.2d at 797 (no abuse of discretion in excluding psychiatric testimony regarding defendant's belief that he was not subject to income tax because jury could determine whether refusal to pay was in good faith from defendant's testimony); United States v. West, 670 F.2d 675, 682 (7th Cir.) (no abuse of discretion in excluding psychiatric testimony concerning whether defendant's below-average intelligence precluded him from realizing that an automobile given to him was a bribe because jury was able to assess defendant's intelligence during his testimony), cert. denied, 457 U.S. 1124, 1139, 102 S.Ct. 2944, 2972, 73 L.Ed.2d 1340, 1359 (1982). We conclude that the District Court did not abuse its discretion by excluding Dr. Brown's testimony.
 
 
 32
 The convictions of Foote and Thompson are affirmed.
 
 III.
 
 33
 We turn now to the arguments appellants raise concerning their sentences.
 
 
 34
 Each appellant was convicted of at least one count of using a firearm in the commission of a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c), and each received the mandatory sentence the statute requires. Appellants now argue that the Sentencing Guidelines are invalid because the prosecutor has the discretion to choose either to charge use of a firearm as a separate substantive offense under section 924(c), or to assert the firearm use merely as a specific offense characteristic that will serve to enhance the sentence for any drug trafficking offense of which the defendant is convicted. Appellants argue that the disparity in sentencing that might occur between two defendants who committed the same unlawful act, simply because of the way in which the prosecutor drafted the indictment, violates the statutory goal of "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. Sec. 3553(a)(6) (1988). We disagree.
 
 
 35
 The Sentencing Commission was fully aware of the existence of section 924(c) and its mandatory sentencing requirement when it constructed the Guidelines sentencing system. See United States Sentencing Commission, Guidelines Manual, Sec. 2K2.4 (Nov.1989) (statutory minimum of section 924(c) controls). The fact that the prosecutor is empowered to choose between charging a violation of section 924(c) and merely seeking an enhancement of sentence based on his evaluation of the strength of the case against the defendant does not in any way violate the statutory goal of "avoid[ing] unwarranted sentence disparities." 21 U.S.C. Sec. 3553(a)(6); cf. United States v. Batchelder, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204-05, 60 L.Ed.2d 755 (1979) ("Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced.").[3]
 
 
 36
 Thompson, Monroe, and Williams argue that the Sentencing Guidelines are invalid because the Commission did not adequately comply with the statutory requirement that in formulating the Guidelines the Commission consider the capacity of the federal correctional facilities. This argument has no merit.
 
 
 37
 Congress instructed that in preparing the Guidelines the Commission was to "take into account the nature and capacity of the penal, correctional, and other facilities and services available" and "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission." 28 U.S.C. Sec. 994(g) (Supp. V 1987). Congress did not intend to prohibit any increase in the federal prison population. Rather, it simply directed the Commission to consider the impact of the Guidelines on available prison resources. United States v. Erves, 880 F.2d 376, 380 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989). The Commission has complied with this mandate. It studied the effect of the proposed sentencing guidelines on the federal prison population and projected that the impact would be minor. United States Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements ch. 7 (June 18, 1987). Appellants' challenge to the Sentencing Guidelines on this statutory ground therefore must fail. Accord Erves, 880 F.2d at 380; United States v. White, 869 F.2d 822, 828 (5th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).
 
 
 38
 Williams claims that the District Court erred in determining his offense level based on the entire 23.1 grams of crack shown to have been distributed in furtherance of the conspiracy to which he pleaded guilty.[4]
 
 
 39
 He first argues that the Guidelines application notes at the time he was sentenced, which provided that a conspirator's sentence should be based on "the defendant's conduct or the conduct of coconspirators in furtherance of the conspiracy that was known to defendant or was reasonably foreseeable," U.S.S.G. App. C amend. 137, impermissibly expanded the conduct for which an individual could be punished. (The November 1989 amendment deleting this language and referring the reader to another provision was merely technical.) According to Williams, because 21 U.S.C. Sec. 841(a)(1) makes it unlawful for any person "knowingly or intentionally" to distribute a controlled substance, and 21 U.S.C. Sec. 846 prohibits any person from conspiring to commit an offense defined in Title 21, section 846 should penalize a conspirator only to the extent that he "knowingly or intentionally" agrees to engage in each particular drug transaction within the conspiracy.
 
 
 40
 This argument is misconceived. Williams pleaded guilty to knowingly and intentionally engaging in a conspiracy to distribute cocaine. He is therefore criminally responsible for his conduct and as much of the conduct of his coconspirators in furtherance of the conspiracy as he either knew about or reasonably could foresee. U.S.S.G. Sec. 2D1.4, comment. (n.1) & App. C amend. 137; see also United States v. Holland, 884 F.2d 354, 358 (8th Cir.) ("When a conviction for violating federal drug statutes is involved, the trial court may consider amounts of drugs involved in the conviction of co-conspirators."), cert. denied, --- U.S. ----, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989). The District Court found that 23.1 grams of cocaine were involved in the conspiracy, and that the drug transactions of Williams's coconspirators were reasonably foreseeable by him. We cannot say that these findings of fact are clearly erroneous.
 
 
 41
 Williams next contends that the 4.5 grams of cocaine seized in the October 13 search of the apartment should not have been included in the calculation of his base offense level because evidence obtained during a police search is not a "conspiracy transaction" as contemplated by U.S.S.G. Sec. 2D1.4, comment. (n.1).[5] This argument is equally without merit. The substantive offense charged in Count XIII was possession of 4.5 grams of cocaine with intent to distribute. The possession with intent to distribute 4.5 grams of cocaine was clearly part of the conspiracy to which Williams pleaded guilty, and therefore was properly considered in determining Williams's offense level. See United States v. Sleet, 893 F.2d 947, 949 (8th Cir.1990) (quantity of drugs seized in police search of defendant, his residence, and his vehicle after arrest for distribution was properly used in calculation of defendant's base offense level on distribution charge).
 
 
 42
 Thompson contends that the District Court should have reduced his base offense level by two levels because he was a "minor participant." See U.S.S.G. Sec. 3B1.2(b). The District Court's ruling that Thompson was not a "minor participant" in the offenses charged is a factual determination that we review under the clearly erroneous standard. United States v. Ellis, 890 F.2d 1040, 1041 (8th Cir.1989).
 
 
 43
 Thompson was convicted on five counts: one count of conspiracy, two counts of distribution, and two counts of using a firearm in the commission of a drug offense. Thompson participated in two of the sales of crack to Ransburg and on both occasions he was carrying a firearm. Thompson was seen selling crack to individuals at the back door of the 4031 Harrison apartment. On October 13, when the police raided the 4422 Troost apartment, Thompson was found in the apartment along with 4.5 grams of cocaine and a firearm. In view of these facts, we are satisfied that the District Court's finding that Thompson was not a "minor participant" is not clearly erroneous.
 
 
 44
 Thompson's final argument is that the District Court erred in sentencing him to an additional ten years pursuant to 18 U.S.C. Sec. 924(c) on the second firearm count of which he was convicted. Section 924(c)(1) provides:
 
 
 45
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years....
 
 
 46
 Thompson received a five-year sentence on Count V, the August 12 firearm conviction, and an additional ten-year sentence on Count VII, the August 16 firearm conviction. He contends that the ten-year prison term was improper because the phrase "second or subsequent" does not include later counts of conviction contained in the same indictment as the initial count of conviction under section 924(c). We disagree.
 
 
 47
 The question whether section 924(c) mandates an enhanced ten-year prison sentence for a defendant convicted of two section 924(c) offenses charged in the same indictment has been addressed and answered in the affirmative by the Eleventh Circuit in United States v. Rawlings, 821 F.2d 1543 (11th Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). In Rawlings, the court reasoned that while the term "subsequent" means "following in time, order, or place," and implies that the second conviction must occur on a later date than the first conviction, the term "second" merely means "another or additional conviction," and may apply to two convictions contained in the same indictment. Id. at 1545. The court found that the purpose of section 924(c) is to discourage offenders from employing a firearm in a violent or drug crime and to significantly increase the penalty for an offender who uses a firearm in two separate crimes. There is no logical reason to require that a defendant be convicted and sentenced under two discrete indictments before applying the enhanced penalty. Id. at 1546. We agree with the reasoning and holding of the court in Rawlings. Were we to read section 924(c) as Thompson urges, prosecutors would be required to place each section 924(c) violation by the same defendant into a separate indictment in order to trigger the ten-year penalty provision. There is nothing in the statute to show that Congress intended such a result, and we decline to adopt Thompson's reading of section 924(c).
 
 
 48
 Thompson was convicted on two counts of using a firearm in two distinct drug transactions. The plain language of the statute mandates a ten-year prison term for a defendant's "second or subsequent" conviction under section 924(c). Because Thompson committed the firearm offense in Count VII after the firearm offense in Count V, the District Court properly imposed an additional ten-year sentence on the Count VII conviction.
 
 IV.
 
 49
 Finding no merit in any of appellants' challenges to their convictions or sentences, we affirm the judgment of the District Court.
 
 
 
 [1]
 The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri
 
 
 [2]
 The Honorable John W. Oliver, Senior United States District Judge for the Western District of Missouri
 
 
 [3]
 Williams further argues that the potential sentence disparity that might occur as a result of prosecutorial discretion is a factor the District Court must consider in its decision whether to depart downward from the recommended Guidelines sentence. Based on our discussion above, we reject this argument. Williams further argues that the court's failure to depart downward in his case was improper. We recently have held that the exercise of discretion by the District Court in refusing to depart downward is nonreviewable by this Court. United States v. Evidente, 894 F.2d 1000, 1004 (8th Cir.1990). Here the District Court so exercised its discretion. Williams's argument therefore affords him no basis for appellate relief
 
 
 [4]
 Thompson also includes this claim in his brief. Thompson's offense level, however, was based on 18.6 grams of cocaine. This is the total amount of cocaine involved in the counts of distribution on which Thompson was convicted and does not include the 4.5 grams of cocaine involved in Count XIII, on which the District Court granted Thompson's motion for directed verdict. Accordingly, this challenge by Thompson lacks a factual foundation
 
 
 [5]
 The commentary to section 2D1.4 (Attempts and Conspiracies) states, "If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale." U.S.S.G. Sec. 2D1.4, comment. (n.1)