**UNITED STATES of America, Appellee,**

v.

**Terry Wayne QUARLES, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Lamont Alberto BROWN, Appellant.**

**Nos. 90–5536, 90–5552.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1991.

Decided Jan. 14, 1992.

Rehearing and Rehearing en banc
Denied Feb. 21, 1992.

Deborah Ellis, St. Paul, Minn., argued (Douglas Thompson, on brief), for appellant Quarles.

James Grochal, Minneapolis, Minn., argued, for appellant Brown.

Christopher Bebel, Asst. U.S. Atty., Minneapolis, Minn., argued for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Defendants Terry Quarles and Lamont Brown appeal their convictions of conspiring to possess with intent to distribute in excess of fifty grams of cocaine base ("crack"). Brown also appeals his conviction of possession of crack with intent to distribute. Both defendants attack the District Court's [1] denial of their motions to suppress evidence seized during two separate stops of automobiles involved in the events leading to their arrests. Quarles raises additional issues relating to his trial and sentencing. We affirm.

## I.

On June 6, 1990, a reliable confidential informant told the St. Paul police that Brown and Quarles had received a large quantity of crack and would be making deliveries that afternoon in a white Cadillac driven by either Brown, Quarles, or a juvenile named Ogean Pruitt. Each of these individuals is a young black male. On the basis of this information the police put several surveillance teams in the Summit–University area that afternoon. At about 4:15 p.m. one of these teams saw a white Cadillac, driven by a young black male, enter a short side-street that ends in a parking lot. The police had estimated a vehicle would only take thirty to forty seconds to traverse this street; although they temporarily lost sight of the white Cadillac, they saw it reappear about five minutes after it had entered the street. They then stopped the vehicle.

The driver was identified as Ogean Pruitt and placed under arrest. A search of the Cadillac produced four grams of crack along with some hotel keys, one of which was a key to Room 30 of the Midway Motel. During this search, Quarles appeared on foot and asked what was going on. When the police informed him that

---

**1.** The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

Pruitt had been arrested, Quarles told them he owned the Cadillac and asked if he could have the motel keys. The police refused and Quarles left.

At about 5:00 p.m., Officers McNeely and Cooper arrived in plain clothes at the Midway Motel. They had been directed to secure the area until a warrant could be obtained to search Room 30. Both officers were given all available intelligence regarding the possible receipt of a large quantity of crack by Quarles and Brown as well as the details of Pruitt's arrest. The motel's manager told the officers that Room 30 had been vacant since June 3 and consented to a search of the room.

Nothing was found during this search, after which Officer Cooper went to the motel's office to review telephone records for the room while Officer McNeely waited outside in their unmarked cruiser. A short time later Quarles entered the motel's office and spotted a police radio Cooper had left on the front desk. Cooper testified that Quarles appeared to be very nervous and began backing out of the office. When Cooper asked if she might help him, Quarles asked at what age a person could rent a room and backed out the office door.

McNeely, who recognized Quarles from a previous contact, watched him exit the office and approach two other men who were walking towards Quarles from a bronze Cadillac. One of those men later was identified as Brown. As the three conversed, McNeely overheard Quarles say something about "cops." Immediately, the officer radioed for a backup, got out of his car and identified himself. Quarles and Brown stopped, but the third man began walking away from the motel. McNeely went after the third man and ordered him to stop. While McNeely was thus occupied, Quarles and Brown attempted to drive off in the bronze Cadillac. McNeely went after the pair, ordered them out of the car, and asked for identification. With McNeely busy with Quarles and Brown, the third man again attempted to leave the motel

area. At that point officers Flaherty and Scott arrived. McNeely told them to watch Quarles and Brown and again went after the third man.

As McNeely turned to pursue the third man, Officer Flaherty saw Brown reach into his pants. Flaherty suspected that Brown may have been reaching for a weapon; the officer rushed Brown, placed his hands on the Cadillac, and performed a "pat-down" search. Flaherty felt a hard lump, reached into Brown's pants and pulled out a quantity of cocaine that was found to weigh 210 grams. Both Brown and Quarles then were arrested and later were indicted on the charges at issue in this appeal.

Prior to their trial, Brown and Quarles moved to suppress the evidence seized during the stops of the Cadillacs. After a hearing, the magistrate [2] found the stop of the white Cadillac was a valid investigatory stop; the officers had probable cause to arrest Pruitt; and the subsequent search of the Cadillac was valid as incident to Pruitt's arrest. With respect to the bronze Cadillac, the magistrate found McNeely had a reasonable suspicion to order Brown and Quarles to stop the car and identify themselves; the two were not initially under arrest at the time of the stop; and Officer Flaherty was justified in searching Brown's pants after Brown appeared to reach for a weapon. Based upon these findings, the magistrate recommended that defendants' motions to suppress be denied. The District Court adopted the magistrate's findings and denied the motions.

A jury found Brown and Quarles guilty of conspiracy to possess crack with intent to distribute. Brown also was convicted of possession of crack with intent to distribute. Quarles was acquitted on the possession charge. Both defendants appeal, reasserting the arguments they advanced in support of their suppression motions. Quarles also challenges an instruction to the jury; the sufficiency of the evidence; an alleged inconsistency between his con-

---

**2.** The Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

spiracy conviction and his acquittal on the possession charge; and the calculation of his sentence.

## II.

 Quarles contends that the evidence obtained during the search of his white Cadillac should have been suppressed because the stop was not supported by reasonable suspicion and because the resulting search was not incident to a lawful arrest. "Reasonable suspicion may be based on an informant's tip as long as it is sufficiently reliable." *United States v. Thompson*, 906 F.2d 1292, 1295 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990). Here, the tip on which the police were acting not only came from an informant known by them to be reliable, but also was substantially corroborated when the surveillance team observed a white Cadillac, driven by a black male in the Summit–University area, taking an unreasonably long time to travel through a short street. In these circumstances, it was reasonable for the police to suspect that the white Cadillac was involved in the cocaine delivery scheme to which the informant had alerted them. Their justifiable stop of the white Cadillac revealed the driver to be Pruitt, one of the individuals identified by the informant. These circumstances provided the officers with sufficient probable cause to arrest Pruitt. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted). The cocaine base discovered behind the radio in the white Cadillac's dashboard, the motel room key found on the front floorboard, and the other items found in the car [3] were products of a lawful search incident to arrest. The District Court did not err in denying Quarles's motion to suppress this evidence.

3. These other items included some cash, a pager, and a bill of sale showing that Quarles had paid cash for the Cadillac.

## III.

██ Brown argues the cocaine base found in his pants should have been suppressed because the search resulted from an invalid stop of the bronze Cadillac and an illegal seizure of his person. We disagree. If a law enforcement officer has reasonable suspicion that criminal activity "may be afoot," *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), he may stop and briefly detain individuals for investigative purposes. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). Reasonable suspicion is based on "specific and articulable facts," *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, which are considered collectively and "in light of the significance that a law enforcement officer experienced in detecting criminal activity would attach to them." *United States v. Turpin*, 920 F.2d 1377, 1385 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991).

At the time Officer McNeely attempted to detain Brown, he was aware of the reliable informant's tip that Brown and Quarles had obtained a large quantity of crack that morning and would be making deliveries that afternoon. The officer also knew that Quarles's car had been stopped earlier that afternoon and had been found to contain a small amount of crack and a key to a room at the Midway Motel. The officer had observed Brown and Quarles arrive together at the motel and had overheard their conversation concerning "cops." When McNeely stopped Brown, the defendant attempted to flee with Quarles in the bronze Cadillac. These circumstances justify McNeely's investigatory detention of Brown.

██ Because McNeely's stop was valid, Officer Flaherty's decision to frisk Brown to determine if he was armed was permissible, *Turpin*, 920 F.2d at 1385 (citing *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883), especially since Flaherty saw Brown put his hands

inside his pants. Flaherty detected a hard lump that might have been a firearm; he was justified in reaching into Brown's pants to determine whether Brown possessed a weapon. Because this search was valid, the District Court correctly denied Brown's motion to suppress.

## IV.

■ We now turn to Quarles's remaining claims, which relate to the 210 grams of crack seized from Brown. Quarles reasons that the weight of the crack is an element of the crime with which he was charged, namely, conspiracy to possess with intent to distribute in excess of fifty grams. Quarles argues the government failed to produce sufficient evidence to sustain his conviction because the 210 grams were found on Brown and only four grams were found in Quarles's white Cadillac. In this connection, Quarles also argues there was no direct testimony as to the amount of crack found on Brown.

We review the evidence in the light most favorable to the government, which includes giving it the benefit of all reasonable inferences. *United States v. Temple,* 890 F.2d 1043, 1045 (8th Cir.1989). Although the government did not ask any witness the exact weight of the crack found on Brown, the crack so found was admitted into evidence, its exact weight (210.7 grams) was established, and it was identified as the cocaine base Officer Flaherty took from Brown's pants. There is testimony that possession of 210 grams of crack cocaine is inconsistent with personal use and that Quarles had learned shortly after his arrest that the amount seized from Brown was 210 grams. There is also ample evidence from which the jury could infer the existence of a conspiracy between Quarles and Brown to distribute this cocaine base. Quarles's attack on the sufficiency of the government's evidence is unavailing.

Quarles claims the jury instruction with respect to the conspiracy charge was am-

biguous because it did not clarify that the cocaine at issue was the larger amount found on Brown rather than the four grams found in Quarles's white Cadillac following Pruitt's arrest.[4] Quarles speculates that this ambiguity may have resulted in his being convicted of an uncharged crime, namely, conspiracy to possess with intent to distribute the smaller amount of cocaine base. He claims the acquittal on the possession count "significantly bolster[s]" his contention that the jury found he "was unaware of the cocaine which Brown was carrying but he was aware of the cocaine in his car which was driven by Pruitt." Appellant's Brief at 22. Quarles extends this line of reasoning to argue that because there was "no factual basis upon which the trial court could properly conclude that the amount of crack cocaine with which [he] was convicted was 210 grams," Appellant's Brief at 31, the District Court erred in using this amount to calculate his base offense level for sentencing purposes.

Quarles's exercises in speculation are not persuasive. We have concluded the evidence presented was sufficient to sustain his conviction of conspiracy to possess with intent to distribute in excess of fifty grams. In addition, we are satisfied the jury was not misled as to the amount of crack in issue. Throughout the trial, the government's case focused on the 210 grams found on Brown, not the four grams found in Quarles's white Cadillac. We therefore cannot agree with Quarles's claims regarding the allegedly ambiguous jury instructions, the significance of his acquittal on the possession count, or his sentence. Having carefully reviewed the record, we are convinced it fully supports Quarles's conviction and sentence.

■ Judge Bright's concurring and dissenting opinion, arguing that Quarles's case should be remanded for resentencing, seeks to apply a new approach based on views expressed in a now-vacated opinion from the Sixth Circuit, *United States v. Davern,* 937 F.2d 1041 (6th Cir.1991), *va-*

---

4. The record shows Quarles did not object to the instruction when it was proposed or when it was read to the jury. Because he failed to object, his conviction may be reversed only if there is plain error. *United States v. Kragness,* 830 F.2d 842, 855 (8th Cir.1987).

*cated, reh'g en banc granted.* Even if we thought the vacated opinion in *Davern* persuasive, we do not agree with Judge Bright that the jury's findings with respect to Quarles were inconsistent. A conspiracy conviction under 21 U.S.C. § 846 does not require proof of an act in furtherance of the conspiracy; the statute only requires proof that the defendant "entered into an agreement with at least one other person and that the agreement had as its objective a violation of the law." *United States v. Foote,* 898 F.2d 659, 663 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990); *see also United States v. Covos,* 872 F.2d 805, 810 (8th Cir.) (holding that section 846 does not require proof of an overt act in addition to proof of an agreement), *cert. denied,* 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). In contrast, a conviction for aiding and abetting requires proof of some act done in furtherance of the conspiracy's purpose. *Foote,* 898 F.2d at 664. Therefore, assuming *arguendo* that an arguably inconsistent verdict were a mitigating factor that a sentencing court could take into account, no such verdict was reached in this case. *United States v. Fesler,* 781 F.2d 384, 390 (5th Cir.), *cert. denied,* 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 661 (1986). We similarly reject, for the reasons adumbrated above, Judge Bright's suggestion that the District Court lacked a sufficient evidentiary basis for attributing to Quarles, for sentencing purposes, the 210 grams of crack found on his co-conspirator Brown.

## V.

For the reasons stated, the convictions and the challenged sentence are affirmed.

BRIGHT, Senior Circuit Judge, concurring and dissenting.

I write separately in No. 90–5536, *United States v. Terry Wayne Quarles,* first to concur in affirming the convictions, second to conclude we should remand for resentencing in *United States v. Terry Wayne Quarles,* based on the perceptive opinion of Chief Judge Merritt in *United States v. Davern,* 937 F.2d 1041 (6th Cir.1991), and, generally, to call special attention of sentencing judges to that opinion.[1]

Terry Wayne Quarles, who has no prior felony convictions and was only twenty-one years of age at the time of conviction, will serve twelve years and seven months without the possibility of parole under the Sentencing Guidelines as computed by the United States Probation Officer and adopted by the sentencing judge. That computation is based on Quarles being held accountable for 210.7 grams of crack found in the possession of co-defendant Brown.

In resentencing, I would first note that the district court had discretion to decide whether the mandatory minimum ten-year penalty of 21 U.S.C. § 841(b) applied to Quarles. The jury only found that Quarles was guilty of conspiring to possess a "substantial quantity" of crack. Jury Instr., Tr. at 6. Thus, the jury did not make a finding as to the specific quantity of crack Quarles was guilty of conspiring to possess and distribute. The sentencing court could have found under the circumstances that the government did not prove that Quarles was guilty of conspiring to possess and distribute a sufficient amount of crack to come under the mandatory minimum sentence of ten years. *See United States v. Wood,* 834 F.2d 1382, 1388–90 (8th Cir. 1987); *United States v. Moreno,* 899 F.2d 465, 473 (6th Cir.1990). *But see Wood,* 834 F.2d at 1390–92 (Bright, J., dissenting) (asserting that findings underlying possible sentence enhancement under § 841(b) should be made by the jury).

Whether the sentencing court decides that Quarles is subject to a mandatory minimum sentence under section 841(b) or not, given the mitigating circumstances of the jury's inconsistent findings, the sentencing court should not be bound by the guidelines' mechanical approach to sentencing. According to the guidelines, Quarles's base offense level is 34 and his criminal history level is I, giving him a sentencing range of 151–181 months. However, in this case,

---

**1.** Although the Sixth Circuit has decided to rehear the *Davern* case en banc, I still find the reasoning of Chief Judge Merritt's opinion persuasive.

the defendant was found not guilty by the jury of aiding and abetting in possession with intent to distribute the crack found on Brown. When the guidelines do not address mitigating circumstances such as this, I believe district courts would be wise to adopt the analysis of the Sixth Circuit in *United States v. Davern*, 937 F.2d 1041 (6th Cir.1991).

In *Davern*, the Sixth Circuit considered whether the sequence of sentencing steps [2] prescribed by the Sentencing Commission required the district judge to sentence a drug offender based on amounts of crack actually possessed (eighty-five grams) or the greater amount an offender tried to buy (500 grams) and 1,070 grams which included plaster of paris which the undercover agent apparently passed off as cocaine. The district court "reluctantly" followed the recommendation of the probation officer to give the defendant-offender the maximum sentence under the guidelines. *Davern*, 937 F.2d at 1043. The Sixth Circuit reversed and remanded, holding that these "aggravating and mitigating circumstances" had not been taken into consideration by the Sentencing Commission, and, therefore, the sentencing judge should have utilized a more flexible sentencing approach in which the district court must initially consider the facts and fix a sentence not greater than necessary as set out in the last two sentences of 18 U.S.C. § 3553(b).[3] 937 F.2d at 1051.

The *Davern* court stated:

The legislative history of § 3553(b) states unambiguously that the District Court should first consider whether there are facts and circumstances which make the Commission's proposed sentencing level inappropriate. The legislative history establishes an order for considering "the nature and circumstances of the offense," including "a pertinent aggravating or mitigating circumstance." The District Court shall perform this function first and then decide whether to "impose a sentence outside the guidelines." The Senate Report suggests the proper sequence. Referring to § 3553(a) and (b), the Senate Report explains:

The bill requires the judge, before imposing sentence, to consider the history and characteristics of the offender, the nature and circumstances of the offense, *and the purposes of sentencing*. He is *then* to determine which sentencing guidelines and policy statements apply to the case. Either he may decide that the guideline recommendation appropriately reflects the offense and offender characteristics and impose sentence according to the guideline recommendation or he may conclude that the guidelines fail to reflect adequately a pertinent aggravating or mitigating circumstance and im-

---

2. *Davern* described the sequence as follows:
(1) find "applicable offense guideline section," (2) find the "base offense level," (3) adjust offense level for characteristics of victim and role of defendant, (4) adjust offense level by grouping counts, including uncharged or unconvicted "relevant conduct," (5) adjust offense level for "acceptance of responsibility," (6) adjust for criminal history of defendant, (7) apply sentencing grid for imprisonment, (8) apply sentencing rules on fines, restitution, probation and parole, (9) adjust result for "departures."
937 F.2d at 1043 n. 2.

3. 18 U.S.C. § 3553(b) reads:
**Application of guidelines in imposing a sentence.**—The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating cir-

cumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

pose sentence outside the guidelines. (Emphasis added.)

S.Rep. No. 98–225, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3235.

937 F.2d at 1046.

The *Davern* court added:

The nonqualitative guideline application process advocated by the Sentencing Commission, which omits the initial steps outlined by Congress designed to insure individualized sentences "not greater than necessary," insures maximum deference by judges to the Commission's complex code of interlocking rules that seek to mete out exact punishments for different crimes. Such a mechanical application of a complex code has the effect of delegating more sentencing responsibility to a sentencing bureaucracy—to probation officers who in turn are now trained by the Commission to apply the steps of the Applicable Instructions. It reduces the responsibility of the judge for the result, and it does not emphasize the court's first duty under § 3553(a): to impose a "just punishment" which is "not greater than necessary to comply" with the sentencing objectives established by Congress.

*Id.* at 1046–47 (footnotes omitted).

Thus, to comply with 18 U.S.C. § 3553, a sentencing court must first analyze whether the guidelines reflect "the pertinent aggravating or mitigating circumstances" surrounding a defendant's crime.[4] 18

U.S.C. § 3553(b). In this case, the jury convicted Quarles with an inconsistent verdict, acquitting him of aiding and abetting in the possession of crack, but also convicting him of conspiring to possess crack with intent to distribute.[5] The guidelines do not instruct a judge how to deal with a situation where a jury has acquitted a defendant of aiding and abetting a substantive offense, but convicted the defendant of conspiring to commit the same offense. Although a jury may convict a defendant with an inconsistent verdict, *e.g., United States v. Guzman,* 849 F.2d 447, 448 (9th Cir.1988), the sentencing judge should be able to take a jury's acquittal on a similar count into consideration when sentencing a defendant. Therefore, if the sentencing judge believes that the jury's acquittal mitigates Quarles's conviction on conspiracy, the sentencing judge should depart from the guidelines and impose a just punishment which is "not greater than necessary" to comply with Congress's sentencing objectives. 18 U.S.C. § 3553(a).

Moreover, sentencing courts should take into account the public interest and concern in the costs of excessive incarceration. In this case, the defendant entered prison as a twenty-one-year-old first offender, and will emerge from prison as a hardened thirty-three-year-old ex-convict. A twelve year incarceration in a federal facility costs, on average, in excess of $49.07 a day, or $17,-909 a year.[6] In the opinion of this writer, excessive sentences serve no useful purpose and result in economic waste as well.[7]

---

**4.** There are many mitigating or aggravating circumstances that do not warrant departure from the guidelines. The district court must decide which factors are serious enough to justify departure from the normal sentencing range. *E.g., United States v. Aloi,* 773 F.Supp. 55, 69 (N.D.Ohio 1991) (applying *Davern* analysis and holding that defendant's military service record and various family problems do not justify departure from the guidelines).

**5.** Technically, the verdicts were not inconsistent because a conviction for conspiracy under 21 U.S.C. § 846 does not require proof of an act in furtherance of the conspiracy; the statute only requires that the defendant entered into an agreement with at least one other person and that the agreement had as its objective a violation of the law. *United States v. Foote,* 898 F.2d 659, 663 (8th Cir.), *cert. denied,* ⸺ U.S. ⸺,

111 S.Ct. 112, 112 L.Ed.2d 81 (1990). A conviction for aiding and abetting requires some proof of an overt act in furtherance of the conspiracy. *Id.* at 664. However, the jury's finding of not guilty on the aiding and abetting count mitigates Quarles's culpability in the conspiracy, and the sentencing judge should be able to take this finding of a lower level of guilt into consideration.

**6.** Letter from J. Michael Quinlan, Director, Federal Bureau of Prisons, Washington, D.C., to Honorable Myron H. Bright, United States Senior Circuit Judge (Aug. 5, 1991) (on file with dissenter).

**7.** The United States incarcerates more than one million people, a larger share of its population than any other nation, according to the Sentenc-

Although Quarles should be punished for succumbing to the quick riches of drug dealing, he deserves a chance to rehabilitate himself for his own benefit and to become a productive citizen for the benefit of society.

Accordingly, I would remand this case to the district court for reconsideration of the sentence.

ing Project, a non-profit research organization. *United States Leads in Imprisonment,* St. Louis Post–Dispatch, Jan. 6, 1991, at 6E.