DECISION AND JUDGMENT ENTRY
Brent Wagner appeals his conviction for operation of a motor vehicle while under the influence of alcohol ("OMVI"), a violation of R.C. 4511.19(A)(1), and failure to control, a violation of R.C. 4511.202. Wagner asserts that the Circleville Municipal Court erred when it overruled his motion to suppress, because the arresting officer did not possess a reasonable, articulable suspicion to suspect Wagner of illegal behavior. We disagree because we find that the informants' tip gave rise to a reasonable suspicion that Wagner was committing an OMVI offense. Accordingly, we overrule Wagner's assignment of error and affirm the judgment of the trial court.
 I.
In the early morning hours of April 23, 1999, William Baisden and his passenger, Charlene Cross, were traveling north on U.S. Route 23 when they observed the truck in front of them swerving considerably. The couple used a cellular phone to call a law enforcement hotline and report their belief that the driver of the truck was intoxicated. They gave the hotline dispatcher the truck's license plate number and a description of the truck and its route of travel, and they continued to follow the truck.
The hotline dispatcher broadcast an alert to area law enforcement to be on the lookout for a swerving truck followed by an informant. The dispatch described the truck, its route of travel and its license number. Pickaway County Sheriff's Deputy Tim Carpenter and Ashville Police Officer Stephen Peters were together in Ashville when they heard the dispatch.
Deputy Carpenter responded. Because the dispatcher had tracked the license plate number to an Ashville address, Deputy Carpenter attempted to intercept the truck by driving toward U.S. Route 23 from Ashville. Baisden and Cross called the hotline to report that the truck turned and was headed toward Ashville. Shortly thereafter, Deputy Carpenter met the truck, followed by Baisden and Cross, on Cromley Road. The truck swerved left of center and almost struck Deputy Carpenter's cruiser.
Baisden and Cross saw Deputy Carpenter and called the hotline a third time to let authorities know that he had just passed the suspicious truck. Meanwhile, Deputy Carpenter turned around to pursue the truck and radioed Officer Peters that the truck was headed toward State Route 316 in Ashville. Deputy Carpenter did not mention that the truck swerved and almost struck his cruiser.
Officer Peters watched from the intersection of Cromley Road and State Route 316 as the truck approached with Baisden and Cross following. He did not see the truck swerve, but noticed that it was traveling unusually slow. As the truck turned onto State Route 316, Baisden and Cross pulled into a parking lot. Officer Peters followed the truck, with Deputy Carpenter catching up a few moments later. The truck proceeded a few blocks at approximately ten miles per hour with its left turn signal blinking, then turned left onto Scioto Street. Officer Peters observed the truck drifting considerably from left to right, nearly hitting a parked car. At that time, Officer Peters activated his overhead lights.
The driver of the truck, Wagner, promptly stopped at the side of the road. Because Scioto Street does not have marked lanes, Officer Peters did not cite Wagner for failure to stay within his lane. However, he cited Wagner for failure to control his vehicle. Officer Peters noticed an odor of alcohol as he spoke to Wagner. He proceeded to conduct field sobriety tests, and ultimately arrested Wagner for OMVI.
Wagner appeared before the Circleville Municipal Court and pled not guilty. He filed a motion to dismiss, asserting in part that Officer Peters illegally stopped him without possessing reasonable suspicion of criminal activity. At the hearing, Basiden and Cross both testified about their observations of Wagner's driving and their calls to the hotline. Deputy Carpenter testified that he heard the dispatch and saw Wagner swerve in front of him. Officer Peters testified that he heard the dispatch and observed Wagner drift from left to right and nearly strike a parked car. Officer Peters testified to his belief that he must base "probable cause" upon his own observations, not a radio dispatch. Officer Peters further testified that he based his decision to stop Wagner solely on the impaired driving he observed, and not on the information he heard in the hotline dispatch.
The trial court overruled Wagner's motion. Wagner pled no contest to the OMVI charge, and the state dismissed the failure to control charge. Wagner timely appealed, asserting that the trial court committed prejudicial error by overruling his motion to suppress. Wagner presented two issues for our review within his assignment of error:
 I. Are "drifting" on an unmarked street for an unknown distance, for an unstated width, and passing a parked vehicle within four inches of its mirror sufficient articulable facts to allow an initial traffic stop?
 II. Did the officer improperly rely upon a police radio broadcast of a possible DUI which was based upon a cell phone call from a private citizen to *DUI which was broadcast by OSHP?
 II.
We first consider the second issue Wagner presents for our review: whether a police officer may rely upon an informant's telephone tip in determining whether to stop a motorist suspected of OMVI. Wagner asserts that the officer must investigate and make observations that corroborate the informant's tip before the officer can stop the suspected motorist.
The Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the investigatory stop of a motor vehicle unless the stop is justified by a "reasonable suspicion" of criminal activity. See, generally, Terry v. Ohio (1968), 392 U.S. 1, 19; State v.Andrews (1991), 57 Ohio St.3d 86, 87 at fn. 1. Recently, the Ohio Supreme Court addressed whether police may base reasonable suspicion solely upon a citizen informant's telephone tip.Maumee v. Weisner (1999), 87 Ohio St.3d 295. The court determined that an officer could justify a stop based solely upon a dispatch, so long as the state can "demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Id. at 298. Thus, if the dispatcher possesses a reasonable suspicion, then the responding officers may rely upon that suspicion. Id.
A law enforcement officer, including a dispatcher, has a "reasonable suspicion" if he or she can state specific and articulable facts which, together with rational inferences therefrom, warrant the intrusion. See State v. Bobo (1988),37 Ohio St.3d 177, 178; see, also, United States v. Quarles (C.A.8, 1992), 955 F.2d 498, 501. The stop must be viewed in light of the totality of circumstances presented to the officer at the time. See United States v. Sokolow (1989), 490 U.S. 1, 8; State v. Loza
(1994), 71 Ohio St.3d 61, 71; State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
Where the information police possess before stopping a suspect came from an informant's tip, reasonable suspicion depends upon the value and reliability of that tip. Maumee at 299, citing Alabama v. White (1990), 496 U.S. 325, 328. To determine the reliability of a tip, the court should consider the informant's veracity, reliability, and the basis of his or her knowledge. Maumee at 299, citing White at 328. Identified citizen informants are considered "highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary * * *." Maumee at 300, citingIllinois v. Gates (1983), 462 U.S. 213, 233-234. The amount and type of information necessary to consider an informant "identified" is limited. Maumee at 301. Identification of the informant by occupation or by face-to-face contact is sufficient. Id., citing United States v. Pasquarille (C.A.6, 1994), 20 F.3d 682, Edwards v. Cabrera (C.A.7, 1995),58 F.3d 290, State v. Loop (Mar. 14, 1994), Scioto App. No. 93CA2153, unreported, and State v. Ramey (1998), 129 Ohio App.3d 409.
In Maumee, the court determined that, because the informant continued to assist police by following a suspected drunk driver and by remaining on the cellular phone line with the dispatcher, the informant invited face-to-face contact with police. Id. at 302. The informant also supplied his name and telephone number. Thus, the court concluded that the informant was identified and therefore possessed greater credibility than other types of informants. Id. Additionally, the court considered the source of the informant's information, firsthand observation of the suspect's driving, to be highly credible and reliable. Id.
Finally, the court concluded that the informant's motivation, to protect the safety of the suspect, himself, and other motorists on the road, supported the reliability of the tip. Id. Thus, the court determined that the informant's tip was sufficiently reliable to give rise to reasonable suspicion without independent police corroboration of the suspect's impaired driving. Maumee at 302-303.
In this case, the informants were identified. Baisden and Cross followed Wagner as they made three calls to the hotline dispatcher and identified themselves. Additionally, like the informant in Maumee, Baisden and Cross personally observed Wagner's impaired driving as it occurred. Baisden and Cross each testified that they called the hotline and followed Wagner because they were concerned for Wagner's safety and the safety of other motorists. Based upon this information, the informants' tip merited sufficient credibility to give rise to the dispatcher's reasonable suspicion that Wagner was in the process of committing a crime. Therefore, Officer Peters' could have relied upon the dispatch to justify stopping Wagner.
 III.
Wagner asserts in the first issue he presented for our review that we must reverse the trial court's decision if Officer Peters did not possess reasonable suspicion without the benefit of the hotline dispatch. Wagner theorizes that, because Officer Peters testified that he stopped Wagner based only on his own observation of Wagner's driving, we should not consider the dispatch in determining reasonable suspicion.
Officer Peters testified to his belief that he could not base his "probable cause" on the hotline dispatch, and therefore that he waited until he personally observed a traffic violation before stopping Wagner. However, Officer Peters also acknowledged that he heard the dispatch, and that the dispatch prompted him to observe and follow Wagner. The trial court found that Officer Peters considered the totality of circumstances, including the hotline dispatch, and that the totality of circumstances justified the stop.
Despite Officer Peters' testimony that he placed no reliance upon the hotline dispatch, the trial court, as finder of fact, was free to believe or disbelieve that testimony in whole or in part. Swanson v. Swanson (1976), 48 Ohio App.2d 85,97; State v. Wooten (June 27, 1989), Athens App. No. 1359, unreported. Additionally, in weighing the evidence, the court could consider all reasonable inferences from the evidence. SeeState v. Garrow (1995), 103 Ohio App.3d 368, 370-371. Thus, the trial court was free to conclude that Officer Peters heard the dispatch and considered it, as well as his observations of Wagner's failure to control the truck, in determining that he possessed a reasonable suspicion that justified stopping Wagner.
Because the trial court determined that Officer Peters possessed reasonable suspicion based upon both the dispatch and the impaired driving he observed, and because we find that the stop would have been proper even if based upon the dispatch alone, we need not reach the issue of whether Officer Peters' observations alone justified the stop. We find that the trial court did not err by overruling Wagner's motion to suppress, because Officer Peters possessed a reasonable suspicion that Wagner was in the process of committing an OMVI offense.
In conclusion, we overrule Wagner's sole assignment of error, we decline to address his first issue for review, and we resolve his second issue for review by concluding that Officer Peters properly relied upon the dispatch. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Evans, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.
For the Court
 BY: __________________________ Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.