1997 SD 46

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Danny Dale GOODROAD, Defendant and Appellant.**

**No. 19414.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 20, 1997.

Decided April 30, 1997.

---

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, for plaintiff and appellee.

John A. Schlimgen of Stuart and Gerry, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Danny Dale Goodroad appeals a judgment of conviction and sentence for driving under the influence of alcohol, false personation (impersonation) with an intent to deceive a law enforcement officer, receiving stolen property, and of being a habitual offender. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] In June 1994, John and Lanette Stoffel of Norfolk, Nebraska placed an ad in a local newspaper to sell their 1978 Ford LTD. The asking price was $700. On June 20, Goodroad responded to their ad and spoke to Lanette Stoffel on the telephone. When Goodroad arrived in Norfolk that evening, he telephoned the Stoffels and asked John Stoffel to bring the car to the motel where Goodroad was staying. He identified himself to Stoffel as Branch Breedlove. Stoffel brought the car to the motel and the two negotiated a price of $500. Goodroad gave Stoffel a Western Union money order in the amount of $700 claiming that was all the money he had and asked that Stoffel accept the money order and send him the $200 difference to his address in Custer, South Dakota. Stoffel agreed and the two men returned to Stoffel's home where title to the car was signed over to Goodroad as Branch Breedlove.

[¶ 3.] The next morning Stoffel deposited the money order at his bank and obtained a $200 money order to send to Goodroad which Lanette mailed to Goodroad the next day. That afternoon, Stoffels' bank informed them the Western Union money order was fraudulent. Stoffels immediately contacted their post office and were able to retrieve their

$200 money order. Eventually, Stoffels' LTD was found in a Moorhead, Minnesota parking lot.

[¶ 4.] On July 1, 1994, a car dealership in Moorhead, Minnesota reported to the local police that a 1988 maroon Chevy Camaro was discovered missing during a monthly inventory check. On July 26, 1994, at approximately 5:00 a.m., Mitchell, South Dakota police received a complaint regarding a reddish-colored Firebird-type vehicle parked on a city street. When the police arrived, they discovered a maroon Chevy Camaro with its engine running, headlights on, and driver's door hanging open. Goodroad was slumped over the wheel. The officer turned off the engine, woke Goodroad and asked him to step out of the vehicle. Goodroad attempted to walk away from the officer twice but was stopped each time. When he was asked for identification, Goodroad told the officer his name was Patrick Karl Loftis and retrieved from his wallet a birth certificate indicating the same.

[¶ 5.] Goodroad's speech was slurred, he staggered when he walked, and he smelled of alcohol. He agreed to sobriety tests, after which he was arrested for driving under the influence of alcohol. He was read the implied consent warning and his *Miranda* rights and signed the card indicating he had been read these rights. On both sides of the card, Goodroad signed his name as Pat Loftis. After the officer received information the Camaro was stolen, Goodroad was arrested for possession of a stolen vehicle.

[¶ 6.] The Camaro bore dealer plates from a car dealership in Centerville, South Dakota indicating that a Trevor Wright had purchased the car. A search of the car's trunk revealed title to the car plus another set of dealer plates from the Centerville dealership. Also located inside the vehicle was title to Stoffels' LTD, a hotel receipt for Branch Breedlove of Custer, South Dakota, and a Crossroad Motel receipt from Beresford, South Dakota and Holiday Inn receipt for Trevor Wright. It was later discovered the dealer plates on the Camaro were stolen and that the Centerville dealership never sold the car to Trevor Wright and had never seen Goodroad.

[¶ 7.] On March 8, 1996, Goodroad was convicted of driving under the influence, false personation (impersonation) with intent to deceive a law enforcement officer, and receiving stolen property. He was also found to be a habitual offender. Goodroad was sentenced to thirty-seven years in the state penitentiary. Goodroad appeals his conviction and sentence raising the following issues:

1. Whether the trial court abused its discretion in admitting evidence of an uncharged prior car theft by Goodroad?

2. Whether the trial court abused its discretion in denying Goodroad's motion for substitute counsel?

3. Whether the trial court abused its discretion in not recusing itself from the proceedings?

4. Whether Goodroad's rights were violated when the trial court conducted a hearing outside of Goodroad's presence?

5. Whether Goodroad's right to a fair trial was violated when a witness for the State made reference to Goodroad's refusal to talk with law enforcement after his arrest?

6. Whether the sentence imposed in this case constituted cruel and unusual punishment?

7. Whether the trial court abused its discretion in denying Goodroad's motion for appointment of experts?

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether the trial court abused its discretion in admitting evidence of an uncharged prior car theft by Goodroad?**

[¶ 9.] Evidentiary rulings made by the trial court are presumed correct and are reviewed under an abuse of discretion standard. *State v. Oster*, 495 N.W.2d 305, 309 (S.D.1993). The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion. *State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986). The trial court admitted evidence of the theft

of the Stoffels' LTD as part of the res gestae [1] and as prior bad acts evidence under the "plan" and "intent" exceptions to SDCL 19–12–5 (Rule 404(b)). Goodroad argues this evidence was not res gestae and did not fall into any of the exceptions under Rule 404(b), i.e., "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[¶ 10.] The res gestae rule is the well-recognized exception to Rule 404(b). *State v. Floody*, 481 N.W.2d 242, 253 (S.D.1992) (citing *Carter v. United States*, 549 F.2d 77, 78 (8th Cir.1977)). In *Floody*, we acknowledged the Second Circuit Court of Appeals' holding that " 'evidence' of uncharged criminal activity is not considered 'other crimes' evidence if it 'arose out of the same transaction or series of transactions as the charged offense[.]' " *Floody*, 481 N.W.2d at 253 (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989) (and citing *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983); 22 Charles Wright & Kenneth Graham, *Federal Practice and Procedure* § 5239 (1978); E. Imwinkelreid, *Uncharged Misconduct Evidence* § 2.10 (1984)).

> This court has . . . approved the admission of other crimes where such evidence is 'so blended or connected' with the one[s] on trial . . . that proof of one incident involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged.

*Id.* (quoting *United States v. Tate*, 821 F.2d 1328, 1331 (8th Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988)). "[E]vidence when a part of the res gestae was proper if it was related to and tended to prove the crime charged although it also proved or tended to prove the defendant guilty of another crime." *State v. Burtts*, 81 S.D. 150, 156, 132 N.W.2d 209, 212 (1964) (citing *State v. Staley*, 54 S.D. 552, 223 N.W. 943 (1929)). (*See generally, State v. Itzen*, 445 N.W.2d 666 (S.D.1989)) (Sabers, J., dissenting).

[¶ 11.] In the present case, the Stoffels sold their LTD to Goodroad on June 20, 1994. This vehicle eventually was discovered in a parking lot in Moorhead, Minnesota. On July 1, 1994, a Moorhead car dealership reported a vehicle missing. The dealership said it did not know the exact date the vehicle was taken but that it was sometime between June 1 and July 1, 1994. This stolen vehicle was the 1988 Chevy Camaro in which Goodroad was found on July 26, 1994 in Mitchell.

[¶ 12.] Goodroad argues there was no testimony to suggest the Camaro was stolen with a fraudulent money order as the Stoffels' vehicle had been stolen and the only similarity between these two incidents is that a vehicle was stolen. Goodroad is being less than objective in finding only this single similarity. The record establishes the following similarities Goodroad failed to consider: 1) the LTD was taken June 20 and was later found abandoned in a parking lot in Moorhead, Minnesota, and between June 1 and July 1, the Camaro was stolen from a dealership in Moorhead, linking the events by both time and geographic proximity; 2) both cars were stolen, albeit by different methods; 3) events pertaining to each car involve false identification; 4) among the documents found in the Camaro's trunk were fraudulent Western Union money orders made to the order of both Branch Breedlove (the name Goodroad used with the Stoffels) and Pat Loftis and motel receipts in the names of Breedlove and Trevor Wright; and 4) Goodroad is the common denominator in the criminal activity involving both vehicles.

[¶ 13.] Under the law of res gestae set forth in *Floody*, we affirm the trial court's decision to admit the evidence surrounding the theft of Stoffel's LTD and deem further discussion of this issue under Rule 404(b) moot.

---

1. There are two forms of background, or what was once commonly referred to as res gestae, evidence:

   "(1) 'same transaction contextual evidence,' which refers to other offenses connected with the primary offense; and (2) 'background contextual evidence' which includes all other general background evidence." *Blakeney v. State*, 911 S.W.2d 508, 514 (Tex.App.1995) citing *Mayes v. State*, 816 S.W.2d 79, 86 (Tex.Crim. 1991).

[¶ 14.] **2. Whether the trial court abused its discretion in denying Goodroad's motion for substitute counsel?**

[¶ 15.] We have recently addressed the issue of denial of a motion for substitute counsel and noted that:

Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. A trial court's decision on a request for substitution or a continuance will not be reversed on appeal absent a showing of an abuse of discretion.

*State v. Irvine*, 1996 SD 43, ¶ 9, 547 N.W.2d 177, 180 (citations omitted). The procedures a trial court should follow when presented with a motion for substitution of counsel are:

[W]hen [a] defendant alleges the existence of a dispute leading to a destruction of communication and a breakdown in the attorney-client relationship, the judge is obliged to inquire whether such allegations are true.

. . . . .

When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts ... that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusions.

*Id.* (citations omitted).

[¶ 16.] Our review of the record in this case and Goodroad's argument on appeal indicate Goodroad desired appointment of substitute counsel because he believed his attorney was not adequate and that there was a breakdown in the attorney-client relationship. Despite Goodroad's claim on appeal that the trial court made no inquiry into his reasons or factual basis, the trial court was in receipt of Goodroad's letter of November 16, 1994 detailing the reasons Goodroad believed he was receiving inadequate representation and at the November 30, 1994 hearing Goodroad was given the opportunity to explain his dissatisfaction with his attorney to the trial court. Goodroad admits he was provided this opportunity. Goodroad also argued a motion to remove counsel at a November 22, 1994 hearing which the trial court denied. Goodroad chose to proceed pro se on several motions at that hearing before deciding to let his counsel argue a motion because "he's got a good argument here."

[¶ 17.] The procedures followed at the November 30 hearing demonstrate that the trial court reserved ruling on Goodroad's motion for removal of his counsel until other motions had been presented and ruled upon. Defense counsel then ably represented Goodroad on a motion before the court. Prior to conclusion of the hearing, Goodroad was permitted to proceed with his oral motion to remove counsel. The transcript contains approximately thirty pages devoted to recording Goodroad's colloquy with the court, as well as his requests for greater access to a law library, writing supplies, and a telephone to attempt to obtain counsel from a national defense organization. Goodroad's allegations of inadequate representation included: 1) that defense counsel had not spent enough time with Goodroad; 2) that counsel had not yet had opportunity to peruse the entire record; 3) that counsel did not help Goodroad obtain access to a law library and paper on which to write; and 4) that counsel did not assist Goodroad in getting calls through from the Minnehaha County jail to defense counsel in Chamberlain.

[¶ 18.] None of these reasons support a substitution of appointed counsel in this case. As to Goodroad's claim that the trial court refused to make requisite inquiry into his allegations, the court was well aware that Goodroad's defense counsel had been appointed sometime after the October 4, 1994 hearing which resulted in the removal of previous counsel. Within a matter of weeks of his October appointment, Goodroad was attempting to have his new defense counsel removed. The trial was not scheduled to be held until March 6, 1995. Thus, the fact defense counsel had not yet perused defendant's entire case file in November of 1994 did not prejudice Goodroad's representation.

[¶ 19.] Goodroad was actually represented by five attorneys in the course of this prosecution. The first three were unable to continue his defense through no fault of Goodroad's. The fourth was removed on

Goodroad's theory that the attorney did not provide Goodroad with an adequate defense. The trial court would later comment, in denying Goodroad's motion to remove his fifth counsel, that the fourth defense counsel had been "set up" by Goodroad and that Goodroad had chosen not to get along with him. It was also the desire of the fourth defense counsel that he be relieved from his appointment. The trial court noted on the record that "Mr. Goodroad doesn't seem to like counsel who does not agree with him to every degree or do everything that he would like done immediately. And that is not the requirement of counsel.... It appears to me that he can't and does not choose to get along with counsel." As we noted in *Irvine*, 1996 SD 43, ¶ 15, 547 N.W.2d at 182, "a defendant is not entitled to substitution of counsel where the breakdown in the attorney/client relationship is caused by his own refusal to cooperate with his attorney." (citing *People v. Cumbus*, 143 Mich.App. 115, 371 N.W.2d 493 (1985)).

[¶ 20.] At this hearing, the trial court found no good cause shown for removing present defense counsel and appointing a substitute and denied Goodroad's motion. The court provided Goodroad the option of continuing with his present attorney, proceeding pro se, or doing nothing. The trial court stressed this would be Goodroad's own choice. Under the latter two options, the trial court ordered counsel to stay current with the case and attend all proceedings, albeit sitting in the audience rather than at Goodroad's side, so that at any time Goodroad changed his mind, counsel would be available to represent him. Goodroad chose to proceed pro se and appeared as such at subsequent motion hearings. At a motion hearing held one week prior to trial, he moved to reinstate his defense counsel. This motion was granted.

[¶ 21.] Goodroad has shown no abuse of discretion by the trial court in denying his motion for substitute counsel. We affirm.

[¶ 22.] **3. Whether the trial court abused its discretion in not recusing itself from the proceedings?**

■ [¶ 23.] Goodroad had petitioned for writ of mandamus from this Court naming his fourth defense counsel and the trial court as defendants. As noted above, the trial court granted Goodroad's motion for removal of his fourth defense counsel on October 4, 1994. On October 3, 1994, this Court issued an order denying defendant's petition.

[¶ 24.] Goodroad then filed a second petition for writ of mandamus with this Court on December 1, 1994 which included complaints regarding conditions of his confinement, access to a law library, dissatisfaction with his newly-appointed defense counsel and claiming the trial court was racist and biased. Goodroad asked, inter alia, that his defense counsel and the trial court be removed. On December 9, we issued an order denying this petition.

[¶ 25.] In *Scott v. Class*, 532 N.W.2d 399, 404 (S.D.1995), we stated "[t]he opportunity to disqualify a judge is statutory, ... and not a constitutional right, except as it may be implicit in a right to a fair trial." (citations omitted). The decision to preside over a case lies within the sound discretion of the trial judge. *Hickmann v. Ray*, 519 N.W.2d 79, 80 (S.D.1994). The Code of Judicial Conduct, Canon 3E.(1) then provided in relevant part that:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party....

[¶ 26.] Goodroad's mere filing of a petition to effect removal of a trial judge does not constitute presumed bias as argued by Goodroad, nor has he shown this Court anything proving bias by this trial judge. As defendant herein has been unable to identify or establish either a statutory basis or a constitutional one for his argument under this issue, we affirm.

[¶ 27.] **4. Whether Goodroad's rights were violated when the trial court conducted a "hearing" outside of Goodroad's presence?**

■ [¶ 28.] This meeting was held by the trial court in the presence of the prosecutor and defense counsel, who had been ordered

by the court to be present at all court proceedings in this case following Goodroad's firing him. The meeting was held in response to Goodroad's demand at the November 30 motion hearing to be granted immediate access to an adequate law library for purposes of responding pro se to upcoming matters in his defense. In this meeting, the trial court set forth the terms and conditions for that access.

[¶ 29.] "A judicial proceeding, order, injunction, etc. is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, *any person adversely interested.*" Black's Law Dictionary 576 (6th ed.1990) (emphasis added). Goodroad cannot claim on appeal that this meeting was adverse to his interests when it was in response to his demand for library access and resulted in same. No argument by either party was taken at this meeting.

[¶ 30.] Although we have stated that prejudice is presumed at an ex parte proceeding initiated or invited by a judge, see *O'Connor v. Leapley*, 488 N.W.2d 421, 423 (S.D.1992), we find this meeting was initiated for Goodroad's benefit. This communication, which was not adverse to Goodroad's interests but advanced his cause of law library access, was not ex parte as his attorney was present.

[¶ 31.] **5. Whether Goodroad's right to a fair trial was violated when a witness for the State made reference to Goodroad's refusal to talk with law enforcement after his arrest?**

[¶ 32.] In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court extended a defendant's privilege against self-incrimination to situations where the prosecution uses a defendant's post-arrest silence after receiving *Miranda* warnings, to impeach a defense subsequently offered at trial. The Court held such use of a defendant's silence violates the due process clause of the Fourteenth Amendment. *Id.* In a subsequent case applying *Doyle*, the Court noted the rule rests on " 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence

to impeach an explanation subsequently offered at trial.' " *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623, 630 (1986) (quoting *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 760 (1983)). Because *Miranda* warnings contain an implicit assurance that "silence will carry no penalty, . . . it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of the arrest and to insist that because he did not speak about the facts of the case at the time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony." *Doyle*, 426 U.S. at 618–19, 96 S.Ct. at 2245, 49 L.Ed.2d at 98 (quoting *United States v. Hale*, 422 U.S. 171, 182–83, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99, 108 (1975) (White, J., concurring in judgment)).

[¶ 33.] Goodroad did not testify at trial. However, he claims the State's questioning on direct examination of the Mitchell police officer who arrested Goodroad, regarding his signed *Miranda* warning and implied consent card, resulted in a violation of Goodroad's due process rights under *Doyle*. Goodroad claims unconstitutional reference to his silence was made three times by the State during this examination. The pertinent testimony is as follows:

Q: I'm going to back up a little bit. When you read these rights to him and I'm just going to refer to that question number five, do you understand these rights, what was the defendant's response?

A: He told me that yes, he did understand his rights.

Q: Okay. And as to question number six, do you wish to waive these rights and talk to us at this time, what was his response?

Mr. Smith [defense counsel]: I'm going to object to the answer, Your Honor.

The Court: Overruled.

A: His final response—he did say, no, that he did not wish to answer those questions. . . .

. . . .

Q: And after question six, do you wish to waive these rights and talk to me—talk to us at this time, and there is a hand-written no. Would you have written that in?

A: I wrote the no.

. . . .

Q: As far as the response to say question five and six, when you hand wrote yes and no in respectively, would you have written that information in before he signed the card?

A: Yes, I did.

This selected testimony is found within three pages of the trial transcript and in the context of the State introducing as an exhibit, the card that contained the signed implied consent warning on one side and the signed *Miranda* warning on the other side. Defendant signed both sides as Pat Loftis. This testimony concludes with a second objection on the record by defense counsel, this time on stated grounds of a violation of Goodroad's rights under the Fifth Amendment to the United States Constitution and Article Six of the South Dakota Constitution.

[¶ 34.] We do not agree with the defendant that his postarrest silence was used against him within the meaning of *Doyle*, as it prohibits impeachment on the basis of a defendant's silence following *Miranda* warnings, but does not apply to questioning that makes no unfair use of a defendant's silence. *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222, 226 (1980). In its latest pronouncement on its decision in *Doyle*, the United States Supreme Court noted "the holding of *Doyle* is that the Due Process Clause bars '*the use* for impeachment purposes' of a defendant's postarrest silence." *Greer v. Miller*, 483 U.S. 756, 763, 107 S.Ct. 3102, 3108, 97 L.Ed.2d 618, 629 (1987) (emphasis original). Goodroad fails to demonstrate any use for impeachment purposes that was made of his postarrest silence, and therefore, fails to establish any due process rights violation based upon *Doyle*'s prohibition.[2]

[¶ 35.] Further, the context in which the above testimony was offered involved the admission into evidence of a State's exhibit, namely the implied consent and Miranda warning card which Goodroad signed as Pat Loftis. This exhibit constituted the best evidence in the charge against Goodroad of false personation (impersonation) with an intent to deceive a law enforcement officer. *See* SDCL 19–18–2 ("To prove the content of a writing, ... the original writing ... is required...."). Although Goodroad claims on appeal the State could have offered the exhibit with those portions except for the signature redacted, or requested the trial court to do so, he fails to cite any supporting authority for his argument. Irrespective of this argument, however, as the State's questions "were not designed to draw meaning from silence," we find no unfair use was made of Goodroad's silence. *Anderson*, 447 U.S. at 409, 100 S.Ct. at 2182, 65 L.Ed.2d at 227.

[¶ 36.] **6. Whether the sentence imposed in this case constituted cruel and unusual punishment?**

[¶ 37.] Goodroad was found guilty of driving a motor vehicle while under the influence of an alcoholic beverage, false personation (impersonation) with intent to deceive a law enforcement officer, and receiving stolen property. He was also found to be a habitual offender. Goodroad was sentenced to one year concurrent sentences on the driving while under the influence and false personation charges. On the felony charge of receipt of stolen property, coupled with his habitual offender status, he was sentenced to serve thirty-seven years in the state penitentiary. The maximum sentence Goodroad could have received was life imprisonment. SDCL 22–7–8, 22–6–1(3).

[¶ 38.] Goodroad's argument on appeal is that although by statute, one of his prior crimes was deemed a crime of violence (a burglary via SDCL 22–1–2(9)), the facts in his current conviction indicate a non-violent offense. Continuing further with his argument, Goodroad notes that had his felony conviction been one of a non-violent crime,

2. In its closing argument to the jury, the State did not attempt to take unfair advantage of this evidence in violation of *Doyle*. In fact, the State did not mention this evidence at all.

grand theft is the example he offers, he would have faced a maximum sentence of twenty-five years.[3] However, Goodroad is arguing from facts which do not exist, an argument this Court will not entertain.

[¶ 39.] The State noted that at the time of sentencing, the defendant was thirty-nine years old with a long history of criminal activity. The felony conviction underlying this appeal was Goodroad's fourteenth. His twenty-year work history reflected one month of work, the remainder of this time being used by Goodroad to support himself through criminal activity. None of this is disputed by Goodroad.

[¶ 40.] Goodroad's thirty-seven year sentence does not shock this Court's conscience nor is it so disproportionate to the crime that it activates a proportionality review. *State v. Anderson,* 1996 SD 46, ¶ 29, 546 N.W.2d 395, 402. (*See also State v. Pulfrey,* 1996 SD 54, 548 N.W.2d 34). A sentence within the statutory limits is reviewed under an abuse of discretion standard. *Id.* at ¶ 30, 546 N.W.2d at 402. We find no abuse of discretion by the trial court in handing down this sentence.

[¶ 41.] **7. Whether the trial court abused its discretion in denying Goodroad's motion for appointment of experts?**

[¶ 42.] The trial court is given broad discretion concerning the admission of expert testimony. *State v. Hill,* 463 N.W.2d 674, 676 (S.D.1990). Four requirements must be met when a request for appointment of an expert at county expense is made:

(1) the request must be in good faith; (2) it must be reasonable in all respects; (3) it must be timely and specifically set forth the necessity of the expert; and (4) it must specify that the defendant is financially unable to obtain the required service himself and that such services would otherwise be justifiably obtained were the defendant financially able.

*State v. Rhines,* 1996 SD 55, ¶ 106, 548 N.W.2d 415, 442; *State v. Hallman,* 391 N.W.2d 191, 195 (S.D.1986); *State v. Sahlie,* 90 S.D. 682, 690, 245 N.W.2d 476, 480 (1976). Trial courts should scrutinize a defense request for an expert to insure that an indigent defendant may procure any reasonable defense, and, when in doubt, lean toward the appointment of such an expert. *Hallman,* 391 N.W.2d at 195. "However, that appointment should not be made if the Court finds that the request is 'frivolous, unreasonable, unnecessary for an adequate defense, or without underlying factual support[.]'" *Id.* at 194 (quoting *Sahlie,* 90 S.D. at 691, 245 N.W.2d at 480).

[¶ 43.] Goodroad made a total of six requests for experts in assisting in the preparation of his defense; namely, to assist with his motion for change of venue, to investigate his alibi defense, to perform a psychiatric exam, to determine potential for jury bias, to investigate the Stoffels and the money order he transferred to them, and to analyze handwriting. These motions were all denied.

[¶ 44.] The motion for an appointment of an expert to assist with a change of venue was heard November 22, 1994. Goodroad was proceeding pro se on this motion and did not offer any argument in its behalf. In essence, it concerned defendant's right to a fair and impartial jury. Supplemental information supporting this motion indicated an expert study to determine potential jury bias would cost $5,000 and take five weeks. The court noted this would compel a continuance of the trial proceedings and would be better handled during voir dire examination and the jury selection process. The trial court advised defendant he could bring this matter before the court at that time if it appeared a fair and impartial jury could not be seated.

[¶ 45.] The motion for appointment of a private investigator to assist Goodroad with his alibi defense was heard January 31, 1995. Goodroad was also proceeding pro se on this motion. The trial court denied this motion without explanation but the record demon-

---

3. Under SDCL 22–7–8, when a person is convicted of a felony and has three or more prior felonies, one of which is a crime of violence, the sentence of the principal felony is enhanced to a Class 1 felony. However, under SDCL 22–7–8.1 if all three prior felonies are nonviolent, the sentence for the principal felony is only enhanced by two levels. See SDCL 22–6–1 for authorized punishments for individual sentencing levels.

strates no alibi defense had been raised or notice of same made to the State.

[¶ 46.] The motion for a psychiatric examination was also set for hearing on January 31. Goodroad demonstrated he was not ready to argue the motion. The trial court denied the motion noting there was no other day set for motions except immediately before trial. Goodroad again indicated his inability to argue the motion at that time, stating he had meant to telephone the American Civil Liberties Union but had not yet done so. The State, at the hearing, noted Goodroad's own filing of his motions pro se and correspondence from him in the file argued against the motion.

[¶ 47.] Goodroad's motion for appointment of an expert to poll Davison County residents to determine potential jury bias was also heard at this January 31 motions hearing. The trial court noted this was a renewal of Goodroad's motion for a change of venue and took judicial notice of the fact that one article and one editorial had appeared in the Mitchell newspaper. Following presentation of argument by both sides, the trial court denied the motion stating that if it appeared to be a problem obtaining a fair and impartial jury, the motion could be renewed by either the State, the defense, or the court on its own motion.

[¶ 48.] Goodroad renewed his motion for appointment of a private investigator at a February 28 motion hearing. This time the motion was based on the trial court allowing the Stoffels' testimony to be admitted at trial. Additional State's witnesses were added and Goodroad argued he needed an expert to investigate these witnesses since it was now just three working days before trial was to commence. The record indicates these were minor witnesses. The trial court noted there was no surprise and it would allow the defense additional time to interview these witnesses prior to the time they took the witness stand. The State further offered to have a criminal background check prepared and provided the defense on the Stoffels. The trial court denied the motion.

[¶ 49.] The defendant's motion for a handwriting expert was also heard at the February 28 motion hearing. Goodroad informed this Court he made this request because the trial court was going to allow testimony from the Stoffels regarding the signature on the money order as Branch Breedlove and that it was Goodroad who signed it. As the State pointed out in arguing against this motion, Goodroad signed this document in front of the Stoffels, therefore no handwriting analysis was necessary. The trial court denied this motion.

[¶ 50.] Our individual review of these motions and the trial court's denial of them does not demonstrate an abuse of the trial court's discretion in appointment of experts and Goodroad's argument of this issue has convinced us of none.

[¶ 51.] We affirm on all issues.

[¶ 52.] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

