2003 SD 31

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Scott M. VATNE, Defendant and Appellant.**

**No. 22359.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Decided March 19, 2003.

---

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Steven M. Christensen, Deadwood, South Dakota, Attorney for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] Scott Vatne (Vatne) was convicted after a jury trial of one count of possession of a controlled substance and four counts of distribution of a controlled substance. He was sentenced to one-year for the possession conviction, one-year for the first distribution charge and ten years each for the three remaining distribution convictions, pursuant to SDCL 22–42–2, which mandates a mandatory sentence for a "second or subsequent conviction." Vatne appeals his convictions and we affirm.

**FACTS AND PROCEDURE**

[¶ 2.] On the evening of July 14, 2001, Vatne planned with a female co-worker, L.W. and her roommate, E.M., (both who were nineteen at the time) to have a "hot tub" party at the home of Vatne and L.W.'s boss, Paul Hogan (Hogan). Hogan was out of town at the time and had given Vatne a key to his home and permission to use the hot tub.

[¶ 3.] The two young women met Vatne at his apartment around midnight. Before leaving, all three drank a beer. After leaving the apartment, they made a stop downtown at the pawn shop where Vatne worked. Once there, the girls picked out several pornographic movies to watch that night, and Vatne offered each of them a line of methamphetamine, which L.W. and E.M. consumed. After leaving the pawn shop, Vatne bought some beer at a local convenience store.

[¶ 4.] Upon arriving at the Hogan residence, Vatne made the females several mixed drinks and also offered them another line of methamphetamine, which once again, L.W. and E.M. consumed. The three of them watched the pornographic movies and then decided to get into the hot tub, all the while drinking alcoholic drinks. In the hot tub, Vatne had sexual intercourse with each of the females. After E.M. started crying and told Vatne to stop, they all got dressed and Vatne gave E.M. a ride home.

[¶ 5.] The next evening, the two women went to the police station and reported that they had been raped. During the course of their interview, they admitted snorting lines of methamphetamines, which Vatne had given them twice during the evening. During a second police interview with Vatne, he admitted giving the females the methamphetamines twice during the evening; however, he stated that the sexual intercourse was consensual.

[¶ 6.] Although Vatne was not charged with anything relating to the sexual assault allegations, he was charged with Possession of a Controlled Substance and four counts of Distribution of a Controlled Sentence. Ultimately, Vatne was found guilty on all counts and sentenced to one-year each for the possession conviction and the first distribution conviction, with ten years each for the remaining distribution convictions. The sentences are to be served concurrently.

[¶ 7.] Vatne appeals his convictions, seeking the following for this Court's review:

1. Whether the trial court properly denied Vatne's motion to dismiss the indictment.

2. Whether the trial court abused its discretion when it considered counts 3, 4, and 5 as "second or subsequent convictions," pursuant to SDCL 22–42–2, and therefore, sentenced Vatne to mandatory sentences of ten years each.

3. Whether the trial court abused its discretion when it denied Vatne's motion in limine which sought to prohibit any reference to the rape allegations.

## STANDARD OF REVIEW

[¶ 8.] The decision whether to grant or deny a motion to dismiss an indictment is within the sound discretion of the trial court, subject to an abuse of discretion standard. *State v. Kleinsasser*, 436 N.W.2d 279, 281 (S.D.1989).

[¶ 9.] A trial court's interpretation of a statute is a question of law, reviewed by this Court de novo. *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611 (citations omitted).

[¶ 10.] A trial court's evidentiary ruling is reviewed under an abuse of discretion standard. *State v. Smith*, 1999 SD 83, ¶ 39, 599 N.W.2d 344, 353 (citing *State v. Spiry*, 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263) (citations omitted). "An evidentiary ruling will not be overturned unless error is 'demonstrated ... [and] shown to be prejudicial error.'" *Id.* (quoting *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D.1976)). "Error is prejudicial when, 'in all probability ... [it] produced some effect upon the final result and affected rights of the party assigning it.'" *Id.* (quoting *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D.1983)).

## ANALYSIS AND DECISION

[¶ 11.] **1. Whether the trial court properly denied Vatne's motion to dismiss the indictment.**

[¶ 12.] Vatne argues that the circuit court should have dismissed the indictment against him because the only witness testimony before the grand jury was based on hearsay evidence and was misleading. Specifically, DCI Agent Pat West testified in the grand jury proceeding that in his interview with L.W. and E.M., they alleged that Vatne had supplied them with methamphetamine twice and sexually assaulted them in the early hours of July 15, 2001. Agent West also testified that Vatne had admitted during an interview that he had given L.W. and E.M. methamphetamines two times during the night in question. Finally, Agent West testified that the urine of the two women revealed the presence of methamphetamines.

[¶ 13.] SDCL 23A–8–2 articulates the nine grounds for dismissing an indictment or information. This statute provides:

Upon motion of a defendant made pursuant to subdivision 23A–8–3 (1), (2) or (3), the court must dismiss an indictment or information in any of the following cases:

(1) When it is not found, endorsed, and presented or filed as prescribed by this title;

(2) When the names of the witnesses are not inserted at the foot of the indictment or information or endorsed thereon;

(3) When it does not substantially conform to the requirements of this title;

(4) When more than one offense is charged in a single count;

(5) When it does not describe a public offense;

(6) When it contains matter which, if true, would constitute a legal justification or excuse of the offense charged, or other bar to the prosecution;

(7) When the grand jury which filed the indictment had no legal authority to inquire into the offense charged because it was not within the jurisdiction of the grand jury or because the court was without jurisdiction of the offense charged;

(8) When a person was permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration, except as provided in § 23A–5–11; or

(9) When a defendant charged by information did not have or waive a prelimi-

nary hearing before the information was filed.

**[¶ 14.]** These nine grounds for dismissal of an indictment are exclusive. *State v. Springer–Ertl,* 1997 SD 128, ¶ 7, 570 N.W.2d 39, 40–1 (holding that judge could not dismiss information on ground of lack of probable cause).[1] Therefore, although Vatne contends that the grand jury testimony was hearsay and incompetent, these are simply not grounds for dismissal. Furthermore, in *State v. Hoekstra,* 286 N.W.2d 127, 128 (S.D.1979), we joined the majority of courts when we held that this Court will not inquire into the "legality or sufficiency of the evidence upon which an indictment is based." *See also State v. Gardner,* 429 N.W.2d 60, 61 (S.D.1988); *Kleinsasser,* 436 N.W.2d at 281.

**[¶ 15.]** In *Kleinsasser,* the defendant argued that it was reversible error when the trial court denied his motion to dismiss the indictment against him when the indictment was based on hearsay evidence. 436 N.W.2d at 281. In that case, we rejected defendant's argument and found the *Hoekstra* case to be totally dispositive of that issue. *Id.* We, therefore, held that "neither the Fifth Amendment, nor justice and the concept of a fair trial, required indictments to be open to challenge on the grounds that there was inadequate or incompetent evidence before the grand jury." *Id.* (citing *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956).)[2] Therefore, Vatne's arguments under this issue are rejected.

**[¶ 16.] 2. Whether the trial court abused its discretion when it considered counts 3, 4, and 5 as "second or subsequent convictions," pursuant to SDCL 22–42–2, and therefore, sentenced Vatne to mandatory sentences of ten years each.**

**[¶ 17.]** The trial court sentenced Vatne to one-year in the penitentiary for the first distribution charge and then imposed the ten-year mandatory sentence for the three remaining distribution counts. The trial court imposed this sentence pursuant to SDCL 22–42–2, which provides, in salient part:

> [N]o person may manufacture, distribute or dispense a substance listed in Schedules I or II; possess with intent to manufacture, distribute or dispense, a substance listed in Schedules I or II; create or distribute a counterfeit substance listed in Schedules I or II; or possess with intent to distribute a counterfeit substance listed in Schedules I or II. A violation of this section is a Class 4 felony ... A first conviction under this section shall be punished by a mandatory sentence in the state penitentiary of at least one year, which sentence may not be suspended ... *A second or subsequent conviction under this section shall be punished by a mandatory sentence in the state penitentiary of at least ten years, which sentence may not be*

---

1. While we review the granting of a motion to dismiss an indictment under an abuse of discretion standard, under *Springer–Ertl,* dismissal of an indictment for reasons not set forth in SDCL 23A–8–2 would be an error of law and thus by definition, an abuse of discretion.

2. Even if this Court looked behind the indictment, as Vatne urges us to do, Vatne still would not prevail. Agent West, in the grand jury proceeding, testified about Vatne's admissions that he had given the women the methamphetamines on two separate occasions. SDCL 19–16–3 defines such statements as not hearsay. Furthermore, SDCL 23A–5–15 provides that the rules of evidence apply to grand juries. This testimony was, therefore, properly admitted and supported the requisite probable cause to justify further inquiry at trial. *See State v. Olsen,* 462 N.W.2d 474, 476 (S.D.1990).

*suspended.* Probation, suspended imposition of sentence, or suspended execution of sentence may not form the basis for reducing the mandatory time of incarceration required by this section.

(emphasis supplied). In deciding that the facts of the instant case made application of the ten-year mandatory sentences applicable to the three remaining distribution charges, the trial court concluded: "The requirements of mandatory sentences are met here. [Vatne] distributed to more than one person. Although, it occurred under the same circumstances, [Vatne] did it twice in the same evening."

[¶18.] Vatne argues that common sense interpretation of SDCL 22–42–2 would be that "second or subsequent" convictions must be from altogether different transactions. Therefore, he contends that the trial court erred when it sentenced Vatne to the mandatory sentences for transactions that transpired during the course of the same evening. The State argues that Vatne's distribution of methamphetamine on two occasions to two different women was not the "same transaction" and therefore, the pertinent language of SDCL 22–42–2 is applicable.

[¶19.] The interpretation of the "second or subsequent convictions" language of SDCL 22–42–2 in a case where defendant is charged, tried and sentenced on multiple counts of distribution in one proceeding, is an issue of first impression for this Court. The starting point in this analysis is whether Vatne's distribution of methamphetamine to two women at two separate occasions during the night should be considered "arising out of the same transaction and involving the same facts and witnesses" as Vatne asserts it should be.

[¶20.] In *State v. Sieler,* the defendant was convicted of attempted first-degree murder, kidnapping, second-degree rape, first-degree burglary and aggravated assault. 1996 SD 114, ¶3, 554 N.W.2d 477, 478–79. Each of these convictions arose out the attack of the victim in a three to four hour time span. *Id.* ¶17, 554 N.W.2d at 481. In that case, we stated:

> The "same transaction" test is valid only when "transaction" means a single act. When the "transaction" consists of two or more criminal acts, the fact that the two are "successive" does not require the conclusion that they have merged.

*Id.* at ¶18, 554 N.W.2d at 482 (citing *Commonwealth ex rel. Krell v. Banmiller,* 56 Sch.L.R. 31, 38 (Pa.Com.Pl.1960).) We, therefore, found that "[defendant's] crimes were each distinct separate acts that were completed before the next act began as shown by the facts ..." *Id.* at ¶19, 554 N.W.2d at 482. *See also State v. Cates,* 2001 SD 99, ¶9, 632 N.W.2d 28, 33 (holding that despite defendant's argument that he was convicted under two separate statutes for the same offense, "[e]ach act of sexual penetration constitutes a separate offense").

[¶21.] In the case at hand, Vatne was convicted of four separate distributions that were not from the same transaction. Specifically, Count 2 dealt with Vatne's distribution to L.W. at the pawn shop and Count 3 related to Vatne's distribution to E.M. at the pawnshop. Count 4 concerned Vatne's distribution to L.W. at the Hogan residence later that same evening and Count 5 dealt with Vatne's distribution to E.M. at the Hogan residence. Clearly then, each of the counts of distribution were separate and distinct.

[¶22.] Next, our analysis turns to whether the SDCL 22–42–2's language of "[a] second or subsequent conviction" supports Vatne's enhanced sentence. For guidance, we look to other courts that have faced this same issue in interpreting similar or identical language in the context sentencing enhancements. In *Deal v.*

*United States,* 508 U.S. 129, 130, 113 S.Ct. 1993, 1995, 124 L.Ed.2d 44 (1993), the defendant committed six bank robberies on six different dates, and he was convicted on all counts in a single proceeding. The trial court sentenced him to five years on the first 924(c) count, and imposed the mandatory minimum sentence for each of the remaining 924(c) counts under the enhancement provision. 508 U.S. at 131, 113 S.Ct. at 1995–96, 124 L.Ed.2d at 49. The Supreme Court found that the defendant's second through sixth convictions constituted "second or subsequent convictions" under the enhancement provisions of 18 USC 924(c)(1)(C),[3] which language is similar to SDCL 22–42–2. 508 U.S. at 132, 113 S.Ct. at 1996. The Court noted that "findings of guilt on several counts are necessarily arrived at successively in time." 508 U.S. at 133, n. 1, 113 S.Ct. at 1997. Therefore, the Court recognized that more than one finding of guilt can occur in a single proceeding. *Id.* Just as the defendant in *Deal* was convicted of six different bank robberies that occurred at separate dates, Vatne distributed methamphetamine in four different instances on the night in question.

[¶ 23.] Furthermore, the court in *United States v. Foote,* 898 F.2d 659, 668 (8thCir.1990), *cert. denied,* 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990), held that the term "second" meant "another or additional conviction" and "may apply to two convictions contained in the same indictment." Although that same court later in *United States v. Freisinger,* 937 F.2d 383, 391 (8thCir.1991) held that this interpretation does not apply to the case when defendant has been convicted of more than one 924(c)(1) violation in a single drug trafficking offense, Vatne's conviction arose from four distinct distribution transactions and is more factually similar to *Foote.*

[¶ 24.] Vatne asserts that case law interpreting habitual offender statutes is controlling. He points to *State v. Gehrke,* 474 N.W.2d 722 (S.D.1991), for support. Although in that case we said that the "prior felony conviction must precede the commission of the principal offense" in order to make SDCL 22–7–7[4] operative, *id.* at 726, that statute's language specifically uses the words "one or two prior felonies." Conversely, SDCL 22–4–2 employs the words, "second or subsequent convictions." Further, SDCL 22–7–9[5] contains limiting

---

**3.** This statute provides, in pertinent part, "Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years...."

**4.** SDCL 22–7–7 provides:
When a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States, in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing the class of the principal felony to the next class which is more severe. The determination of whether a prior offense is a felony for purposes of this chapter shall be determined by whether it is a felony under the laws of this state or under the laws of the United States at the time of conviction of such prior offense. For the purpose of this section, if the principal felony is not classified it shall be enhanced to the class which has an equal maximum imprisonment. For the purposes of this section, if the maximum imprisonment for the principal felony falls between two classifications, the principal felony shall be enhanced to the class which has the less severe maximum authorized imprisonment.

**5.** SDCL 22–7–9 provides:
A prior conviction may not be considered under either § 22–7–7 or 22–7–8 unless the defendant was, on such prior conviction, discharged from prison, jail, probation or

words for purposes of the habitual offender statutes that "only one prior conviction arising from the same transaction may be considered." To the contrary, SDCL 22–42–2 contains no such limiting language.

[¶ 25.] This Court has followed the principal that in statutory construction, the legislature's express words are to be given effect. *See Rushmore State Bank v. Kurylas, Inc.*, 424 N.W.2d 649, 657 (S.D.1988) (stating that "the legislature said what it meant and meant what it said") (citations omitted). We agree with the State's argument that by looking at the statutory language of SDCL 22–42–2, the legislature apparently did not intend to limit sentence enhancement to only those convictions which occurred after entry of judgment for a prior violation of SDCL 22–42–2. *See State v. Blem*, 2000 SD 69, ¶ 21, 610 N.W.2d 803, 808 (stating that "[w]ords and phrases in a statute must be given their plain meaning and effect").

[¶ 26.] Moreover, in the final sentence of SDCL 22–42–2, the legislature defined what it considered a "conviction" for purposes of this statute. It defined a conviction for purposes of the mandatory sentence provisions as "the acceptance by a court of any plea, other than not guilty, including nolo contendere, or *a finding of guilt by a jury or court.*" (emphasis added). Therefore, under a plain reading of SDCL 22–42–2, a second or subsequent conviction means a second or subsequent finding of guilt by a jury. We must assume the legislature said what it meant and meant what it said.

[¶ 27.] Finally, although Vatne argues that the trial court's interpretation of SDCL 22–42–2 "arbitrarily" imposes mandatory sentences on first offenders convicted of multiple counts, this argument is not

persuasive. Vatne was convicted of distributing a controlled substance on four separate occasions. As the State notes, he technically could have been charged separately and had been given four separate trials. Quite obviously, this would not have been an economical use of judicial resources. Therefore, the fact that Vatne was charged, tried, and sentenced all in a single proceeding does not mean that SDCL 22–42–2 should not apply to him.

[¶ 28.] **3. Whether the trial court abused its discretion when it denied Vatne's motion in limine which sought to prohibit any reference to the rape allegations.**

[¶ 29.] Vatne argues that the trial court should have granted his motion in limine, which would have excluded the State from presenting the uncharged rape allegations to the jury. During the trial, the State elicited testimony from L.W. and E.M. about the events of the night in question. Both women testified about consuming the methamphetamine, which Vatne had given to them at two different occasions during the night. Further, both women testified about the alleged sexual assault. L.M. testified that she felt she had been "taken advantage of" by Vatne. Vante contends that the uncharged rape allegations made by two young women against him prejudiced the outcome of his trial on the drug charges. However, Vatne cites to no authority in support of this argument.

[¶ 30.] We find that this evidence was properly admitted under the res gestae exception to Rule 404(b). As we stated in *State v. Goodroad:*

parole within fifteen years of the date of the commission of the principal offense. In addition, only one prior conviction arising

from the same transaction may be considered.

This court has ... approved the admission of other crimes where such evidence is 'so blended or connected' with the one[s] on trial ... that proof of one incident involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged.

1997 SD 46, ¶ 10, 563 N.W.2d 126, 130 (citing *State v. Floody,* 481 N.W.2d 242, 253 (S.D.1992)) (additional citations omitted).

[¶ 31.] Herein, the alleged sexual assault combined with the distribution of the methamphetamines to the young women helped explain the circumstances of the series of events of the night. *See State v. Andrews,* 2001 SD 31, ¶ 9, 623 N.W.2d 78, 81 (holding that the disputed evidence was admissible under the res gestate exception because the events "were interconnected and part of the continuing chain of activities ..."). The testimony explained the possible reason that Vatne provided the illegal drugs without cost to the women despite their value on the street for possible illegal sale. Further, testimony concerning the alleged sexual assault helped explain why the two women had gone to the police and admitted their own use of the methamphetamine that night. The distribution of the methamphetamines and the sexual acts that took place were clearly intertwined; as such, the trial court did not abuse its discretion when it denied defendant's motion in limine. We affirm.

[¶ 32.] SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.