ZINTER, Justice
(concurring in part and dissenting in part).
[¶ 41.] I join the opinion of the Court on issue one. On issue two, I dissent. The circuit court did not abuse its discretion in determining that the kinetic energy of the defendant’s vehicle at the time of the collision was relevant to proving whether the defendant was using her vehicle in a manner likely to cause death or serious bodily harm. Additionally, even if the circuit court erred in admitting the evidence, the error was not reversible error. The evidence would not have changed the jury’s verdict. The defendant did not dispute the material facts unequivocally reflecting that she was using her vehicle as a dangerous weapon; i.e. in a manner that was likely to cause death or serious bodily harm.
[¶ 42.] Officer Brian Crozier, an undis-putedly qualified accident reconstructionist, was unable to perform accident speed reconstruction because of the angle of impact of the two vehicles and the lack of markings on the highway. He was, however, able to perform elementary kinetic energy calculations. Those calculations disclosed the energy or force that the defendant’s 2001 Dodge Intrepid exerted on the other vehicle at the time of the collision.[6] The comparative kinetic energy of the defendant’s vehicle and handguns was offered by the State to prove that the defendant had used her vehicle as a “dangerous weapon”; i.e., in a manner that was “likely to inflict death or serious bodily harm” within the meaning of SDCL 22-16-15(8) and SDCL 22-1-2(10) (requiring that “first degree manslaughter” be committed by use of a “dangerous weapon”). In response to the defendant’s relevancy objection, the circuit court ruled that Officer Crozier’s testimony was relevant because it showed “that the car at the time of the accident was being used as a deadly weapon[,]” and that it “g[a]ve the jury some information about the force ... of an impact.”
[¶ 43.] Evidence is relevant if it makes “the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” SDCL 19-12-1. “Relevancy is demonstrated where evidence is necessary to prove an element of the crime.... ” State v. Lassiter, 2005 S.D. 8, ¶ 14 n. 2, 692 N.W.2d 171, 175 n. 2 (citing State v. Red Star, 2001 S.D. 54, ¶ 11, 625 N.W.2d 573, 577).
[¶ 44.] In this case, the kinetic energy evidence was relevant because it was offered to prove an element of first-degree manslaughter. At trial, the defendant argued that she was not guilty of first-degree manslaughter because her manner of use of the vehicle did not make the vehicle a dangerous weapon, an element of the offense under SDCL 22-16-15(3) and SDCL 22-1-2(10). “A dangerous weapon is defined as ‘any firearm, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated *133 or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death, or serious bodily harm.’ ” Seidschlaw, 304 N.W.2d at 105 (emphasis added) (citing the materially identical predecessor to SDCL 22-1-2(10)). Because a motor vehicle is generally not calculated or designed to inflict death or serious bodily harm, the State was required to prove that the defendant had used her vehicle in a manner that was “likely to inflict death or serious bodily harm.” See SDCL 22-1-2(10). See also State v. Stetter, 513 N.W.2d 87, 91-92 (S.D. 1994) (stating that a vehicle can constitute a dangerous weapon in a first degree manslaughter prosecution); Seidschlaw, 304 N.W.2d at 105-06 (same). Kinetic energy evidence was relevant to prove this element. When considered collectively with the defendant’s speed and manner of driving, the kinetic energy of the vehicle made it more probable the vehicle was being used in a manner that was likely to inflict death or serious bodily harm.
[¶ 45.] The majority opines that Officer Crozier’s testimony was not relevant because it was not “related to the manner in which Kvasnicka drove her vehicle.” See supra ¶ 31. According to the Court, “Officer Crozier merely used the weight of a Dodge Intrepid and the speed limit of 65 miles per hour to reach his opinion.” Supra ¶ 31. (emphasis added). The Court also points out that Officer Crozier did not personally testify to the actual force of impact. Supra ¶ 32.
[¶ 46.] However, there was no dispute that the defendant was driving her vehicle at highway speeds and that she caused a high impact collision. The defense offered no evidence to contradict four State witnesses who testified to the extensive damage caused by the high impact collision and the high rate of speed of the defendant’s vehicle. That testimony provided the evidentiary foundation necessary to support Officer Crozier’s use of a 65 miles per hour rate of speed in making his kinetic energy calculations.
[¶ 47.] More specifically, Corbin Bur-well, the driver and owner of the other vehicle, indicated that the crash was a high impact collision. He testified that the defendant’s oncoming vehicle hit his vehicle “hard” on the front and passenger side all the way to the back, sliding his car sideways into the ditch. He indicated that the passenger side of his vehicle was “cut in half.” He further indicated that the force of the impact partially ejected and killed a passenger in the backseat; it knocked Burwell partially out of the car, causing multiple back injuries; and it caused another passenger to suffer a severely broken arm.
[¶ 48.] Highway Patrol Sergeant Kyle Hoekstra was the first responding officer. He confirmed that Burwell’s vehicle was heavily damaged on both the front and passenger side. The defendant’s vehicle also had “very severe” front and passenger-side damage. The front passenger side of the vehicle was completely destroyed. The impact was sufficient to force the vehicle’s engine into the passenger seat area of the defendant’s vehicle. Sergeant Hoekstra observed that the force of the impact caused the vehicles to come to rest 300 to 400 yards apart. The debris field from the collision covered- all three northbound lanes of the interstate for this entire distance.
[¶ 49.] Highway Patrol Trooper Robert Mayer verified that the speed limit in that area was 65 miles per hour. Although he did not know the exact speed of the defendant’s vehicle, Mayer testified that based on the damage to the vehicles and the debris field, “both vehicles [were] definitely going highway speed.” Mayer indicated it was unusual to see vehicle crashes caus *134 ing that much damage. Based on his experience of thirteen years investigating 500 crashes, he opined that this was definitely a “highway-traffic-speed accident.”
[¶ 50.] Trooper Mayer also testified regarding a statement he had taken at the scene from Edward Bouwman. Bouwman was a driver who, by evasive maneuvers, had successfully avoided the defendant’s oncoming vehicle seconds before the fatal collision. When asked to estimate the defendant’s speed, Bouwman told Mayer that the defendant’s vehicle “was flying.” When testifying at trial, Bouwman indicated that he observed the defendant’s vehicle gaining speed and accelerating, consistent with interstate driving. He estimated that, when the vehicle passed him, the defendant’s vehicle’s speed was between 50 and 65 miles per hour. Bouwman testified that, as he watched the car in his rearview mirror, he did not recall seeing any brake lights before the impact.
[¶ 51.] Thus, the Court errs in opining that Officer Crozier’s kinetic energy evidence was not tailored to the defendant’s speed and use of the vehicle. Officer Crozier’s opinion was based on undisputed evidence that the defendant was operating her vehicle at highway speeds at the time of the high impact collision. Even the defendant concedes the point, acknowledging that she “was traveling between 55 and 65 miles per hour” at the time of the collision. Brief for Appellant at 4.
[¶ 52.] The Court also opines that the kinetic energy evidence was not relevant because it only informed the jury about the kinetic energy that any 2001 Dodge Intrepid would exert at 65 miles per hour. Supra ¶¶ 31, 32. However, this is the “narrow view of ‘relevancy’ [that] misinterprets Rule 401 [SDCL 19-12-1]” and has been rejected in this jurisdiction. See Supreme Pork, Inc., 2009 S.D. 20, ¶ 46, 764 N.W.2d at 487-88. Under the correct view of relevancy, evidence need not directly prove the ultimate fact: any proffered item is relevant if it merely appears to “alter the probabilities of a consequential faet[.]” Id. And in this case, the kinetic energy of any vehicle traveling at highway speeds was a fact of consequence to the question whether the defendant’s manner of use of her vehicle would likely cause death or serious bodily harm.
[¶ 53.] Moreover, today’s Court fails to recognize that, in analyzing relevancy, all evidence must be considered collectively. See id. Therefore, “[e]ven though each piece of evidence considered separately is less than conclusive, if when considered collectively with other evidence it tends to establish a consequential fact, such evidence is relevant. For purposes of Rule 401, that is enough.” Id. (emphasis added) (quoting 2 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence, § 401.04[2][c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2008)).
[¶ 54.] In this case, the Court fails to consider the kinetic energy evidence of any 2001 Dodge Intrepid collectively with the other evidence establishing the manner in which the defendant was using her vehicle. When considered collectively, the kinetic energy of a 2001 Dodge Intrepid and the defendant’s manner of use of that vehicle increased the probability that death or serious bodily harm was likely. After all, there is a difference between the likelihood of death or serious bodily harm resulting from the kinetic energy exerted by a vehicle being operated by an impaired driver in a grocery store parking lot and the kinetic energy of an identical vehicle being operated on an interstate at highway speeds. Officer Crozier’s testimony provided the jury with quantitative and qualitative evidence of the energy exerted by the higher velocity vehicle. Certainly, the high kinetic energy evidence increased the *135 likelihood of death or serious bodily harm resulting from this defendant’s method of operating her vehicle at highway speeds.
[¶ 55.] The comparative kinetic energy evidence was also relevant. Officer Crozier explained that a kinetic energy comparison was useful in understanding the energy or force exerted by a vehicle traveling at highway speeds. Officer Crozier compared the kinetic energy of the defendant’s vehicle and his handgun, but he also indicated that the energy or force exerted by the defendant’s vehicle could be compared to any other object. Because the State was required to prove that the defendant’s motor vehicle was a “dangerous weapon,” the circuit court did not abuse its discretion in allowing this motor vehicle’s kinetic energy to be compared to that of a more commonly understood dangerous weapon. After all, the defendant’s manner of use of her vehicle that morning made the vehicle legally the same as a gun or other inherently “dangerous weapon.” SDCL 22-1-2(10). See also Stetter, 513 N.W.2d at 91-92; Seidschlaw, 304 N.W.2d at 105-06. Because the State was required to prove that the manner of use of the vehicle was likely to cause death or serious bodily harm, the circuit court’s kinetic energy ruling was not “clearly against reason and evidence.” See Roach, 2012 S.D. 91, ¶ 37, 825 N.W.2d at 268.
[¶ 56.] Finally, even if we assume that the circuit court erred in allowing the kinetic energy calculation or the kinetic energy comparison, the defendant failed to establish that the error was prejudicial. See State v. Vatne, 2003 S.D. 31, ¶ 10, 659 N.W.2d 380, 383 (requiring reversible error to be prejudicial). “Error is prejudicial when, in all probability!],] it produced some effect upon the final result and affected rights of the party assigning it.” Id. (internal quotation marks omitted).
[¶ 57.] In this case, the assumed error was not prejudicial because there is no question that the jury would have returned the same verdict without the kinetic energy evidence. The defendant admitted that she was driving the 2001 Dodge Intrepid the wrong way on Interstate 229 at night while under the influence of alcohol and marijuana. She even admitted that she was guilty of vehicular homicide.[7] Additionally, numerous witnesses testified to the high impact, highway speed, head-on collision. The prosecutor argued to the jury that death or serious bodily harm was likely because the defendant was operating her vehicle the wrong way on the interstate with marijuana and three times the legal limit of alcohol in her blood (BAC .225 %). The prosecutor then specifically informed the jury that they did not need to consider the one testimonial reference to handguns made during the six-day trial. The prosecutor told the jury that the “rest of the evidence certainly informs you [the jury] that [the vehicle was] a dangerous weapon” by the manner in which it was used. The prosecutor asked the jurors to simply use their common sense to determine whether a 3,100 pound vehicle, operated the wrong way on the interstate at night by an impaired driver, was something that was likely to cause death or *136 serious bodily harm.[8] The defendant offered no evidence to dispute this argument.
[¶ 58.] The Court offers two reasons why it believes the kinetic energy evidence affected the jury’s verdict. The Court first merely reiterates its view that Officer Crozier’s testimony was not specific to the manner in which the defendant drove her vehicle. See supra ¶ 33. But as previously demonstrated, this view is unsupportable under the record in this case. Numerous witnesses to the accident confirmed that Officer Crozier’s calculations were related to the manner in which the defendant was actually driving. The Court also concludes the verdict would have been different because an expert witness presented the kinetic energy evidence. In the Court’s view, this left the jury “with virtually no decision to make other than to conclude that [the defendant] used her vehicle as a dangerous weapon.” Supra ¶ 35. This of course ignores the prosecutor’s specific direction to the jury that it could determine the “likely to cause death or serious bodily harm” question based on the jury’s common sense without the use of the kinetic energy evidence. The Court also ignores the fact that the circuit court specifically instructed the jury “[y]ou are not bound to accept an expert’s opinion as conclusive, but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable.”
[¶ 59.] Under the extreme and undisputed facts of this case, all reasonable jurors would have found that Kvasnicka, driving her motor vehicle at highway speeds the wrong way on an interstate highway at night while incapacitated by alcohol and marijuana, was likely to cause an accident resulting in death or serious bodily harm. Therefore, all reasonable jurors would have found that Kvasnicka was using her vehicle as what our law defines as a dangerous weapon. Consequently, even if the circuit court abused its discretion in allowing the kinetic energy evidence, the error could not have affected the verdict, and this conviction should be affirmed.
[¶ 60.] GILBERTSON, Chief Justice, joins this dissent.

. The physics/mathematical formulas that Officer Crozier used for determining kinetic energy were not challenged as unreliable science. As Officer Crozier explained, the calculations were “very well recognized throughout the accident reconstruction community.” They were published, "proven theories ... based on [the] laws of physics, math[,] and geometry.”

. The defendant did not testify. However, the defense made these admissions in opening and closing statements. By conceding that she was guilty of vehicular homicide, the defendant conceded that she was:
[a] person who, while under the influence of alcohol, drugs, or substances in a manner and to a degree prohibited by § 32-23-1, without design to effect death, operate[d] or [drove] a vehicle of any kind in a negligent manner and thereby cause[d] the death of another person, including an unborn child[.]
See SDCL 22-16-41.

. The Court incorrectly asserts that the State conceded "questionable relevanc[y]” of Officer Crozier’s testimony. See supra ¶ 32. The State merely argued to the jury that the first-degree manslaughter by use of a dangerous weapon charge was sustainable with or without the handgun comparison.